126 Cal.Rptr.2d 475 (2002)
103 Cal.App.4th 131
Raquel SALAZAR, Plaintiff and Appellant,
v.
DIVERSIFIED PARATRANSIT, INC. et al., Defendants and Respondents.
Nos. B142840, B144243.
Court of Appeal, Second District, Division Three.
October 28, 2002.
Rehearing Denied November 14, 2002.
Review Granted January 22, 2003.
*477 Wiezorek, Rice & Dieffenbach and Susan Graham Lovelace, Long Beach, for Plaintiff and Appellant.
Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Louis Verdugo, Senior Assistant Attorney General, Catherine Z. Ysrael and Suzanne M. Ambrose, Deputy Attorneys General, for Attorney General of the State of California, Bill Lockyer, as Amicus Curiae on behalf of Plaintiff and Appellant.
Law Offices of Jeffrey K. Winikow, Jeffrey K. Winikow, Los Angeles; Bornn & Surls and Nancy Bornn, Santa Monica, for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.
Graves & King, Patrick L. Graves, Harvey W. Wimer III, Riverside and Dennis J. Mahoney, San Bernardino, for Defendants and Respondents.
Lewis, D'Amato, Brisbois & Bisgaard and Christopher D. Lockwood, San Bernardino, for California Manufacturers and Technology Association as Amicus Curiae on behalf of Defendants and Respondents.
Certified for Partial Publication.[*]
*476 KITCHING, J.

I. INTRODUCTION
This appeal addresses whether the California Fair Employment and Housing Act (FEHA) creates employer liability for sexual harassment of an employee committed by a non-employee client or customer. Our analysis of Government Code section 12940, subdivisions (j)(1) and (k)[1] leads to the conclusion that these statutes do not create employer liability when a non-employee client or customer sexually harasses an employee. The Legislature considered proposed 1984 legislation which would have amended the statute to make an employer liable for harassment by clients or customers, but rejected that amendment and did not enact it into law. Although an uncodified 1984 preamble stated an existing policy of maintaining worksites free from prohibited harassment and discrimination by clientele, the Legislature did not amend section 12940 to translate that existing policy into statutory rights, remedies and liabilities. The Legislature, not this court, should draft and enact statutes that define the scope of employer liability. We affirm a judgment for defendants entered after the trial court granted their motion for nonsuit, but reverse an award of attorney fees to defendants.
II. PROCEDURAL HISTORY
In the operative complaint, plaintiff Raquel Salazar (Salazar) alleged four causes of action against defendants Diversified Paratransit, Inc. (DPI) and Rudy Vokoun (Vokoun): sexual harassment in violation of the FEHA (§ 12900 et seq.), and California Constitution, article I, section 8; constructive discharge in violation of public policy; intentional infliction of emotional distress; and negligent infliction of emotional distress. The complaint also alleged causes of action for assault and sexual battery against Ernesto Rocha (Rocha). After obtaining his default, Salazar did not proceed further against Rocha, a developmentally disabled man. Rocha is not a party to this appeal.
The case was tried before a jury. At the conclusion of Salazar's case, defendants moved for a directed verdict, which the trial court granted as a motion for *478 nonsuit. The court denied Salazar's motion to file an amended complaint. A judgment on directed verdict ordered judgment in favor of DPI and Vokoun and against Salazar. The judgment also awarded defendants recovery of costs and fees from Salazar in a sum to be determined in a later hearing.
Salazar filed a timely notice of appeal from the judgment and from a later order and judgment granting defendants' motion for attorney fees, costs, and expert witness fees.

III. STANDARD OF REVIEW
Although made as a motion for a directed verdict, the trial court correctly treated the motion, made at the close of Salazar's evidence, as a motion for nonsuit. On appeal, this court sustains a judgment following the grant of a motion for nonsuit only if, after interpreting the evidence most favorably to plaintiffs case and most strongly against the defendant and resolving all presumptions, inferences and doubts in plaintiffs favor, a judgment for the defendant is required as a matter of law. Matters presenting pure questions of law are subject to this court's independent, de novo review. (Santa Barbara Pistachio Ranch v. Chowchilla Water Dist. (2001) 88 Cal.App.4th 439, 444-45, 105 Cal.Rptr.2d 856.) This court independently reviews the interpretation of statutes and administrative regulations. (Margolin v. Shemaria (2000) 85 Cal.App.4th 891, 895, 102 Cal.Rptr.2d 502.)

IV. FACTS
DPI engages in the business of transporting developmentally disabled adults and children from their homes and care providers to day care centers and schools. Vokoun supervised operations and employees at DPI's Long Beach terminal.
Three male DPI drivers had filed written reports concerning misconduct by a DPI passenger, Rocha, beginning on October 11, 1994. These reports involved Rocha's refusal to stay seated on the bus and his refusal to comply with a driver's request to relinquish a knife Rocha had in his possession. Three female drivers filed reports of incidents in which Rocha exposed himself to those drivers. Thus Vokoun and DPI knew of these three previous incidents involving Rocha exposing himself to female bus drivers.
DPI hired Salazar as a bus driver in late August or early September 1997. Salazar drove a few days with another driver, David, to learn the route. Rocha was a passenger on that route. On days when David taught her the route, Rocha touched Salazar's hair and wanted to be by her side. When Rocha left his seat, David told Salazar to take him back to his seat. She did, and put his seat belt on, but Rocha again left his seat. When she again put him back in his seat, he stared at her and made her feel uncomfortable. He called her "bonita," meaning beautiful. He grabbed her purse several times and said he wanted money, even though David told him not to do that. Salazar was scared, and felt uncomfortable around Rocha from the first day she met him. She nonetheless started driving the bus on the route without David. When she found out Rocha was going to be a passenger, she asked the dispatcher if she had to drive him. The dispatcher said, "I guess."
When Rocha rode on Salazar's bus, he got out of his seat and caused Salazar to have to stop the bus and place him back in his seat and fasten his seat belt. After a few days, Salazar reported problems with Rocha to David, the dispatcher, and Vokoun, and asked for a different route because she did not like how Rocha looked at her and wanted to touch her all the time.
*479 Salazar filed written reports of two incidents of Rocha's misconduct. On September 2, 1997, Rocha stood up, and Salazar stopped the bus to put him back in his seat. Salazar saw that Rocha's zipper and belt were down and his genitals were exposed. Rocha tried to grab her arms. Salazar put him back in his seat and continued on her route. Salazar reported the incident in writing to DPI.
After the September 2, 1997, incident, Salazar drove the same route with no male assistant. For the next few days, although he did not expose himself, Rocha continued to misbehave, which made Salazar feel scared and apprehensive. On September 8, 1997, a second incident occurred while Salazar stopped the bus and was waiting to pick up another passenger. Looking in her mirror, Salazar saw Rocha coming toward her. Salazar tried to get out of her seat, but Rocha attacked her and exposed his genitals. Salazar yelled for help from nearby drivers who were waiting for passengers. She hit Rocha with her arm to fight against him. Rocha touched her all over and tried to put his hands under her shirt and shorts. Salazar scratched his face, honked the horn, and tried to kick him. She spoke into the radio, "Ernest is attacking me." Rocha was on top of her. He touched her with his hands and rubbed his face against her face. The attack ended when two male drivers from other buses came onto Salazar's bus.
Salazar telephoned Vokoun and told him what happened. Vokoun came and drove Rocha home.
Salazar submitted a written report about this second incident. Within two days, Salazar decided she could no longer work for DPI, and quit.

V. ISSUE
The published portion of this opinion addresses the main issue in this appeal: whether the anti-harassment provisions of section 12940, subdivisions (j)(1) and (k) make an employer liable for sexual harassment of employees committed by clients or customers.
The unpublished portion of this appeal addresses other issues raised by Salazar.

VI. DISCUSSION

A. Section 1294-0, Subdivisions (f)(1) and (k) Do Not Create Employer Liability for Harassment of an Employee by a Client or Customer

Salazar's FEHA cause of action raises the issue whether an employer is liable for harassment of employees by clients or customers pursuant to section 12940, subdivisions (j)(1) and (k).
At the time of the trial, Salazar's FEHA cause of action relied on section 12940, subdivisions (h)(1) and (i). The Legislature has since renumbered these subdivisions as (j)(1) and (k), which is how this opinion will refer to them.
Section 12940 states: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, ... [¶] ... [¶]
"(j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known *480 of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment."
Subdivision (k) of section 12940 states that it shall be an unlawful employment practice "[f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

1. The Statutory Language Does Not Make Employers Liable for Sexual Harassment by Clients or Customers

Salazar (and plaintiffs amici curiae) argue that the phrase "any other person" in the first sentence of section 12940, subdivision (j)(1) includes customers and clients, and therefore makes an employer liable for sexual harassment by clients or customers. Salazar also relies on statements in the third sentence of subdivision (j)(1), requiring an "entity" to "take all reasonable steps to prevent harassment from occurring" and in subdivision (k), making it an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Salazar argues that because the quoted statutory language does not specifically limit this requirement to harassment by supervisors, managers, and other employees of the employer, it must include the duty to prevent harassment by customers and clients. Our analysis of the statutory language, however, shows that an employer is not liable for sexual harassment of an employee by clients or customers.

a. Principles of Statutory Construction

We begin by analyzing the language of subdivisions (j)(1) and (k) of section 12940, giving the statutory words their ordinary, everyday meaning unless the statute specifically defines them. If its meaning is clear, statutory language controls and there is nothing to interpret. But if the meaning is ambiguous, the court takes a second step and refers to legislative history of the statute. If these two steps fail to reveal the statutory meaning, the court takes the final step of applying reason, practicality, and common sense to the statutory language, interpreting it to make the statute workable and reasonable and in accordance with common sense and justice and avoiding an absurd result. (Halbert's Lumber, Inc. v. Lucky Stores, Inc. (1992) 6 Cal.App.4th 1233, 1238-1239, 8 Cal.Rptr.2d 298.) We construe subdivisions (j)(1) and (k) in the context of the relevant statutory framework. (People v. Goodloe (1995) 37 Cal.App.4th 485, 491, 44 Cal.Rptr.2d 15.)

b. Section 129-0, Subdivision (f)(1) Allows Employer Liability for Harassment by Another Only in Limited Specific Circumstances

The first sentence of subdivision (j)(1) of section 12940 identifies entities which can be directly liable for harassment as an unlawful employment practice: "an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person." The first sentence of subdivision (j)(1), however, makes each entity directly liable only for harassment it commits. It does not make one entity liable for harassment committed by one of the other entities. An employer, therefore, will be directly liable for harassment it commits, but will not be liable for harassment committed by a labor organization, *481 employment agency, apprenticeship training program, "or any other person." Even if, pursuant to section 12925, subdivision (d),[2] "any other person" were defined to include a client and customer, the first sentence of subdivision (j)(1) of section 12940, would not make an employer liable for harassment by "any other person."
The second sentence of subdivision (j)(1) of section 12940 provides an exception to this direct liability of an employer or other entity. It defines specific circumstances in which an entity may be liable for harassment committed by another. The second sentence makes an employer or other entity liable for harassment committed "by an employee other than an agent or supervisor" if a plaintiff can establish two requirements. It makes such harassment unlawful if "the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." Thus as to harassment by a co-employee, the plaintiff must prove that the entity (1) had notice and (2) failed to take immediate and appropriate corrective action. The Legislature carefully defined whose conduct could make the employer liable. The Legislature did not include harassment by clients and customers within this statutory definition.
The second sentence provides the context for the third sentence: "An entity shall take all reasonable steps to prevent harassment from occurring." (§ 12940, subd. (j)(1).) As we have seen, Salazar argues that by not specifying the origin of the harassment, this sentence (and the nearly identical subdivision (k) of section 12940) broadens the employer's duty to prevent harassment committed by co-employees and by the employer's customers and clients. We reject this argument. If the Legislature had intended to expand the scope of employer liability, it would have done so clearly in the second sentence, where it set forth specific conditions for an employer's liability for harassment by another. The second sentence of subdivision (j)(1) requires that an employer (i) had notice of harassment by a co-employee and (ii) failed to take immediate and appropriate corrective action. If the Legislature wished to create employer liability for harassment by clients and customers, it would have included clients and customers in the second sentence. It did not do so, and this court will not rewrite the statute to include what the Legislature omitted.
Moreover, Salazar's reading of the third sentence of subdivision (j)(1) and subdivision (k) of section 12940 raises the question whether it is workable and reasonable to require employers to control the behavior of clients and customers. An employer has managerial and disciplinary power over employees. (See Carrisales v. Department of Corrections (1999) 21 Cal.4th 1132, 1139, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) Thus the employer can reassign an employee and can take other disciplinary steps, up to and including termination, against an employee who harasses another employee. With regard to clients and customers, however, an employer lacks this managerial power of control. It is the province of the Legislature, not this court, to make the policy determination whether, despite the employer's lack of managerial control over customers and clients, the statute should impose liability on an employer for harassment by a client or customer.
We therefore construe the employer's duty to "take all reasonable steps to prevent harassment from occurring" to refer to harassment "of an employee ... by an employee other than an agent or supervisor[,]" *482 and not to harassment by a client or customer. (§ 12940, subd. (j)(1).)

2. The Legislative History of Subdivision (j)(1) of Section 129W Does Not Support Holding Employers Liable for Sexual Harassment by Clients or Customers

a. The Legislature Specifically Deleted Language That Would Have Made Employers Liable for Harassment by Clients and Customers

The legislative history of 1984 amendments to section 12940 shows that the Legislature expressly rejected a proposed amendment which would have made an employer liable for harassment by clients or customers. This legislative history supports our conclusion that employers are not liable for harassment by clients and customers under the statute.
Successive drafts of pending legislation assist the interpretation of the statute ultimately enacted, if its meaning is unclear. (State Farm Mut. Auto. Ins. Co. v. Haight (1988) 205 Cal.App.3d 223, 236, 252 Cal.Rptr. 162.) As originally enacted in 1982, section 12940, subdivision (i) (as it was then numbered) stated: "Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Stats. 1982, ch. 1193, § 2, p. 4260; italics added.) On February 16, 1984, Senator Diane E. Watson introduced Senate Bill No.2012 to amend the anti-harassment provision of section 12940. Senate Bill No.2012 contained a proposed amendment, which we quote with deleted and amended language: "Harassment of an employee or applicant by an employee any person other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Proposed new language in italics and proposed deleted language stricken, in original.)
Amendments dated March 19, 1984, preserved the "by any person other than an agent or supervisor" language. A staff analysis for the Senate Committee on Industrial Relations stated that this version of the bill specifically "[m]akes employers responsible for harassment by any person rather than only by their employees, when the employer knows of the problem and fails to take immediate steps to correct it." (Emphasis in original.)
Amendments dated April 24, 1984, however, restored the original language, deleting "any person" and replacing that phrase by "an employee," as follows: "Harassment of an employee or applicant by any person an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (New language in italics, and deleted language stricken, in original.)
Thus in its initial version, Senate Bill No.2012 would have expanded the employer's liability to include harassment of an employee "by any person." The deletion of "by any person" and replacement with "by an employee," however, shows that the Legislature had the opportunity to adopt the expanded employer liability, but decided not to do so. The Legislature's deletion of a provision which appeared in an earlier proposed version of a statute constitutes strong evidence that the final statute as enacted should not be construed to incorporate the omitted provision. (Central Delta Water Agency v. State Water Resources Control Bd. (1993) 17 Cal. App.4th 621, 634, 21 Cal.Rptr.2d 453; People v. Goodloe, supra, 37 Cal.App.4th at p. *483 491, 44 Cal.Rptr.2d 15.) For this court to adopt the meaning of the statute considered and rejected by the Legislature, in the absence of constitutional infirmity, would contravene fundamental principles of democratic government. (Joyce G. v. Superior Court (1995) 38 Cal.App.4th 1501, 1509-1510, 45 Cal.Rptr.2d 805.)

b. The Author of the 198b. Legislation Interpreted the Statute to Preclude Employers' Liability for Harassment by Clients and Customers

A contemporaneous statement by the author of Senate Bill No.2012, communicated to all State Senators, further supports the conclusion that Senate Bill No.2012 did not create employer liability for harassment of employees by customers and clients. While Senate Bill No.2012 was pending, Senator Watson responded to legislators' objections to amending section 12940 using the "harassment of an employee or applicant by any person other than an agent or supervisor shall be unlawful" language. In a June 14, 1984, memorandum to members of the California State Senate regarding Senate Bill No.2012, Senator Watson stated: "The bill does not hold an employer responsible for outside harassment. This was amended out of the bill in the Senate Industrial Relations Committee."[3] As we have seen, the April 24, 1984, version of Senate Bill No.2012 deleted "by any person" and restored "by an employee."
*484 Senator Watson also responded to concerns voiced by the California Manufacturers' Association that extending employers' liability for harassment by clients and customers would create economic, practical, and legal difficulties for employers. On June 22, 1984, Senator Watson wrote to Michael J. Breining, Legal Counsel for the California Manufacturers Association, addressing these concerns. Senator Watson's letter stated, in relevant part: "Your letter expresses concern over employer's responsibility for customer harassment. This provision has been amended out of the bill."
Later amendments to Senate Bill No.2012 on August 6, 13, 21, and 28, 1984, as well as the final version of the bill enacted into law in chapter 1754, made no further changes to the second sentence and its "by an employee" language. Indeed, although the Legislature has amended section 12940-11 times since 1984, this sentence has remained unchanged except for the 1999 addition of one category"a person providing services pursuant to a contract"to the list of persons protected by the statute. (Stats.1999, ch. 591 (Assem. Bill No. 1670).)

c. The California Legislature Derived the FEHA Anti Harassment Statutes From an Equal Employment Opportunity Commission (EEOC) Regulation, But Omitted the Provision Making Employers Liable for Harassment by Customers or Clients

The California Legislature first enacted the anti-harassment provisions of section 12940 in 1982. (Stats.1982, ch. 1193, § 2, pp. 4259-4260.) Those provisions derive from the version of EEOC regulation, section 1604.11 in effect at that time. The relevant provisions of EEOC regulation, section 1604.11 stated:
"(d) With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.
"(e) An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.
"(f) Prevention is the best tool for the elimination of sexual harassment. An employer should take all steps necessary to prevent sexual harassment from occurring. ..." (29 C.F.R. part 1604, § 1604.11, effective Nov. 10,1980; italics added.)
The second sentence of section 12940, subdivision (j)(1)) derives from subdivision (d) of EEOC regulation, section 1604.11. The third sentence of section 12940, subdivisions *485 (j)(1) and (k) derives from subdivision (f) of EEOC regulation, section 1604.11.
The California anti-harassment statute, however, did not incorporate all parts of the EEOC regulation. Despite Senator Watson's statement that Senate Bill No.2012 codified EEOC regulations, the 1984 amendments omitted the provision of EEOC regulation, section 1604.11, subdivision (e), italicized, supra, that would have made an employer liable for harassment by "non-employees." Given the Legislature's reliance on other parts of section 1604.11 in amending section 12940, the omission of employer responsibility "for the acts of non-employees, with respect to sexual harassment of employees in the workplace" compels the conclusion that the Legislature deliberately intended not to include such liability in section 12940. As we have seen, Senate Bill No.2012 initially attempted to create employer liability for harassment "by any person," but this amendment was rejected. This court should not supply what the Legislature omitted.
This legislative history supports our conclusion that the statutory wording does not create employer liability for harassment of employees by clients and customers.

d. The Uncodified Preamble to the 1984 Amendments Is Inconsistent With the Statute the Legislature Enacted, and Does Not Provide Authority for Holding Employers Liable for Harassment by Clients and Customers

Salazar argues that the uncodified preamble introducing the 1984 amendments provides authority for rewriting subdivisions (j)(1) and (k) to create employer liability for harassment of employees by clients and customers. We disagree and conclude that the text of section 12940 controls over the uncodified 1984 preamble.
The uncodified preamble states: "The Legislature finds and declares that it is the existing policy of the State of California to prohibit harassment and discrimination in employment on the basis of any protected classification. Such conduct whether intentional or unintentional is a violation of the civil rights of California citizenry and has been shown to decrease productivity in the workforce. It is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors and clientele. To further this intent, the Legislature enacts this act." (Stats.1984, ch. 1754, § 1, pp. 6403-6404; italics added.)
Although this uncodified preamble is part of California statutory law (see County of Los Angeles v. Payne (1937) 8 Cal.2d 563, 574, 66 P.2d 658), it does not appear in any statute in the FEHA. Its provisions are not "self-executing" and provide neither a remedy or rules or procedures by which to enforce a right through a cause of action. (See Leger v. Stockton Unified School Dist. (1988) 202 Cal.App.3d 1448, 1454, 249 Cal.Rptr. 688.) Despite the enactment of an existing policy of non-discrimination, if the FEHA does not create a remedy by which an employee can vindicate such a right the Legislature did not intend to create a new right. (Jennings v. Marralle (1994) 8 Cal.4th 121, *486 131-135, 32 Cal.Rptr.2d 275, 876 P.2d 1074.) In Jennings, a codified statute declared that employers' use of "`... arbitrary and unreasonable rules which bar or terminate employment on the ground of age offend the public policy of this State.'" (Id. at p. 131, 32 Cal.Rptr.2d 275, 876 P.2d 1074, quoting Unemp. Ins.Code, § 2070.) Even though that statute declared age discrimination in employment contrary to public policy, the FEHA did not prohibit age discrimination by an employer of fewer than five employees. (8 Cal.4th at p. 132, 32 Cal.Rptr.2d 275, 876 P.2d 1074, citing § 12926, subd. (d).) Similarly, in the instant appeal the 1984 uncodified preamble declares an existing policy against sexual harassment by clients or customers. Nonetheless the Legislature did not embody that policy declaration in FEHA statutes.[4] Moreover, in its 1984 amendments the Legislature rejected language that would have created a right forming the basis for an employee's suit against an employer because of harassment by clients or customers. The Legislature thus excluded that provision from the FEHA.
A statement of legislative findings and declarations generally has relevance to legislative intent. (California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 15, 270 Cal.Rptr. 796, 793 P.2d 2.) However, "`legislative intent is not gleaned solely from the preamble of a statute; it is gleaned from the statute as a whole, which includes the particular directives.' [Citation.]" (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1118, 81 Cal.Rptr.2d 471, 969 P.2d 564.) In this case the language of the 1984 uncodified preamble differs from, and conflicts with, the language of the statute enacted to "further" (Stats.1984, ch. 1754, § 1, p. 6404) that intent.[5] Thus the text of the statute must control. The listing of specific defendants who may be liable for sexual harassment in the first sentence of section 12940 subdivision (j)(1), and the rejection of an amendment that would have expanded employer liability to include harassment of an employee "by any person" reflect a conscious legislative limitation on the scope of the FEHA. (See Harris v. Capital Growth Investors XIV, supra, 52 Cal.3d at p. 1161, 278 Cal.Rptr. 614, 805 P.2d 873.) This court should not construe the statute to include a provision the Legislature omitted in the final version of the bill. (See Madrid v. Justice Court (1975) 52 Cal.App.3d 819, 825, 125 Cal. Rptr. 348, and Dominguez v. Superior Court (1990) 226 Cal.App.3d 524, 532, 276 Cal.Rptr. 564.)
Although section 12993, subdivision (a) requires liberal construction of the FEHA to accomplish its purposes, liberal construction does not extend so far as to require or allow this court to enlarge the scope of the statute in a way the Legislature already rejected. Our goal is to discern *487 the apparent legislative intent in enacting the relevant version of the antiharassment statute, not to adopt a judicial construction to give that provision the meaning we might believe most salutary. (Kelly v. Methodist Hospital of So. California (2000) 22 Cal.4th 1108, 1114, 95 Cal.Rptr.2d 514, 997 P.2d 1169.) Before it expands the scope of the FEHA, the Legislature is equipped to hold hearings, study the economic impact, evaluate the effect on other statutes, and balance the parties' rights. The expansion of liability urged by Salazar involves a policy judgment properly made by the California Legislature. (Esberg v. Union Oil Co. (2002) 28 Cal.4th 262, 270, 121 Cal.Rptr.2d 203, 47 P.3d 1069.) "Our role here is to interpret the statute, not to establish policy. The latter role is for the Legislature." (Carrisales v. Department of Corrections, supra, 21 Cal.4th at p. 1140, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) As the Supreme Court has stated in Carrisales, if the Legislature believes it necessary or desirable to expand liability under FEHA, it can do so. Had it intended to do so, the Legislature would have used clearer language than that found in section 12940, subdivisions (j)(1) and (k). (21 Cal.4th at p. 1140, 90 Cal. Rptr.2d 804, 988 P.2d 1083.)
We have considered Department of Fair Employment and Housing Enforcement Division Directive Number 207 (Directive No. 207), distributed October 1, 1998, captioned "Acceptance of Complaints Involving Co Respondents or Parties Other Than the Primary Respondent." Directive No. 207 is not a regulation promulgated by the Fair Employment and Housing Commission as part of the California Code of Regulations pursuant to its rule-making authority. (§ 12935, subd. (a); Cal.Code Regs., tit. 2, § 7286.4.) Such regulations customarily cite the statutes which authorize them. (Cal.Code.Regs., tit.2, § 7185.0.) Directive No. 207 appears to be a departmental memorandum setting forth procedures for naming individual co-respondents and entities other than the primary respondent (i.e., an entity other than the employer) in departmental complaints. Directive No. 207 states: "The primary respondent's liability for outsider harassment is the same as that for non-supervisory harassment. The respondent is liable if it had actual or constructive knowledge of the outsider harassment, and failed to take immediate and appropriate corrective action." Directive No. 207 cites no statutory authority to support this conclusion. For a California administrative regulation to be valid, it must be consistent with the terms or intent of the authorizing statute. A regulation inconsistent with the statute it seeks to implement is invalid. (Esberg v. Union Oil Co., supra, 28 Cal.4th at p. 269, 121 Cal.Rptr.2d 203, 47 P.3d 1069.) Directive No. 207, moreover, was issued after Salazar's employment ended. Because it concerns departmental complaints, because it cites no legal authority, because it did not exist during Salazar's employment, and because it is invalid as inconsistent with the FEHA, the Department of Fair Employment and Housing Directive No. 207 has no effect on this appeal.

3. Federal Cases Are Not Authority for Interpreting a California Statute Which Has No Federal Counterpart

Salazar also relies on several federal cases holding an employer liable for harassment of an employee by a client or customer. We do not find these cases to be persuasive authority. First, the state and federal statutory schemes treat sexual harassment differently. Title VII of the Federal Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.) contains no statutory prohibition of harassment. Instead, Title VII sexual harassment cases *488 are brought under the theory that sexual harassment, when it becomes sufficiently pervasive and severe to create an abusive working environment, alters the conditions of the victim's employment and constitutes discrimination with respect to the terms and conditions of employment "because of ... sex" in violation of title 42 United States Code section 2000e-2(a)(1).[6] (Oncale v. Sundowner Offshore Services, Inc. (1998) 523 U.S. 75, 78-80, 118 S.Ct. 998, 140 L.Ed.2d 201.) The California FEHA, by contrast, contains a statute prohibiting harassment, which is distinct from the prohibition of discrimination. In light of the different, specific statutes, the language of the harassment statute must be considered independently to decide the harassment issue. (Carrisales v. Department of Corrections, supra, 21 Cal.4th at p. 1137, 90 Cal.Rptr.2d 804, 988 P.2d 1083.)
A second difference between Title VII and the FEHA stems from differences in the administrative regulations adopted pursuant to those statutory schemes. Most of the federal cases cited by Salazar[7] rely on EEOC regulation, section 1604.11, subdivision (e), quoted supra. As we have seen, section 12940, subdivision (j)(1) incorporated some provisions of EEOC regulation, section 1604.11. Subdivision (j)(1), however, did not incorporate the EEOC regulation, section 1604.11(e) employer's liability for non-employees' acts.
Moreover, the California Department of Fair Employment and Housing (DFEH) administrative regulation concerning harassment has no provision comparable to EEOC regulation, section 1604.11, subdivision (e). The DFEH regulation, California Code of Regulations, title 2, section 7287.6, subdivision (b), states in relevant part:
"(2) Harassment of an applicant or employee by an employer or other covered entity, its agents or supervisors is unlawful.
"(3) Harassment of an applicant or employee by an employee other than those listed in subsection (b)(2) above is unlawful if the employer or other covered entity, its agents or supervisors knows of such conduct and fails to take immediate and appropriate corrective action. Proof of such knowledge may be direct or circumstantial. If the employer or other covered entity, its agents or supervisors did not know but should have known of the harassment, knowledge shall be imputed unless the employer or other covered entity can establish that it took reasonable steps to prevent harassment from occurring. Such steps may include affirmatively raising the subject of harassment, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under California law, and developing methods to sensitize all concerned.
"(4) An employee who has been harassed on the job by a co-employee should *489 inform the employer or other covered entity of the aggrievement; however, an employee's failure to give such notice is not an affirmative defense."
Thus the DFEH regulation limits its scope to harassment by "an employer or other covered entity, its agents or supervisors," by "an employee other than those listed in subsection (b)(2) above," and by "a co-employee." The DFEH regulation does not extend employer liability to harassment by a client or customer. Like section 12940, subdivision (j)(1), the DFEH regulation borrowed from EEOC regulation, section 1604.11. Neither the statute nor the DFEH regulation, however, included the provision in EEOC regulation, section 1604.11, subdivision (e) creating employer liability for harassment by "nonemployees."
It is not appropriate to follow federal decisions where distinct language of FEHA evidences a legislative intent different from that of Congress. (Page v. Superior Court (1995) 31 Cal.App.4th 1206, 1215-1216, 37 Cal.Rptr.2d 529; Cal.Code Regs., tit. 2, § 7285.1, subd. (b).) Unlike the FEHA, Title VII has no anti-harassment statute. DFEH section 7287.6, subdivision (b), which contains no provision making an employer liable for harassment by non-employees, provides additional support for concluding that statutory language of the FEHA evidences a legislative intent different from that of Congress. We therefore conclude that the federal cases cited by Salazar do not bind this court.

4. Employees Have Non FEHA Remedies Against Harassment by a Client or Customer

Even though we conclude that the FEHA gives the employee no cause of action against her employer based on harassment by a customer or client, this result does not leave the employee without remedies. The employee retains the right to institute a lawsuit based on nonstatutory causes of action. (Peralta Community College Dist. v. Fair Employment & Housing Com.. (1990) 52 Cal.3d 40, 54, 276 Cal.Rptr. 114, 801 P.2d 357.) The employee can bring a civil action seeking both tort and injunctive relief. (Carrisales v. Department of Corrections, supra, 21 Cal.4th at pp. 1134, 1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) An employee who suffers harassment, for example, can obtain a temporary restraining order and an injunction pursuant to Code of Civil Procedure section 527.6. For another example, if harassment takes the form of sexual battery, the employee has a right of action in tort for damages and for injunctive and other equitable relief pursuant to Civil Code section 1708.5.

5. Conclusion: Defendants Are Not Liable Under Section 129-0, Subdivisions (f)(1) and (k) and the Trial Court Properly Granted a Motion for Nonsuit as to the FEHA Cause of Action

We conclude that the FEHA gives Salazar no cause of action against her employer for harassment by a customer or client. The Legislature rejected an amendment that would have expanded statutory employer liability in this way, and this court defers to that legislative policy determination. We therefore hold that section 12940, subdivisions (j)(1) and (k) do not make the employer DPI and Vokoun liable for the client Rocha's sexual harassment of the employee Salazar. Therefore the trial court properly granted a motion for nonsuit as to Salazar's FEHA cause of action. *490 B.-D.M[**]

VII. DISPOSITION
That portion of the August 8, 2000, order awarding attorney fees in favor of defendants is reversed. The judgment is affirmed in all other respects. Costs on appeal are awarded to defendants Diversified Paratransit, Inc. and Vokoun.
I concur: ALDRICH, J.
KLEIN, P.J., Concurring and Dissenting.
I concur in the majority opinion's reversal of the order awarding attorney fees to defendants, and in its resolution of Salazar's claim for negligent infliction of emotional distress. In all other respects, I respectfully disagree.

SUMMARY
The majority opinion takes the position that "[f]or this court to adopt the meaning of the statute considered and rejected by the Legislature ... would contravene fundamental principles of democratic government." Contrary to the majority opinion's conclusion, the Legislature in fact considered and embraced the principle that employees should be protected from client harassment. Eighteen years ago, in amending the anti-harassment provisions in section 12940 of the Fair Employment and Housing Act (FEHA) (Gov.Code, § 12900 et seq.)[1], the Legislature expressly declared its intent to protect employees from harassment by an employer's "clientele." (Stats.1984, ch. 1754, § 1.) There is no good reason, after all these years, to revisit the statute in order to strip employees of protection from client harassment. In accordance with the Legislature's declared intent, this court should hold an employer is liable under section 12940 for harassment by an employer's "clientele" (Stats.1984, ch. 1754, § 1) if the employer had actual or constructive knowledge of the harassment and failed to take "all reasonable steps" necessary to prevent harassment from occurring. (§ 12940, subds.(j)(1) & (k).)
The touchstone of statutory interpretation of any questioned legislation is the probable intent of the Legislature. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632, 59 Cal.Rptr.2d 671, 927 P.2d 1175.) Here, there is no uncertainty as to legislative intent because the Legislature, in the statute's uncodified preamble, expressly declared its intent to protect employees from harassment by an employer's "clientele." (Stats.1984, ch. 1754, § 1, italics added.) Where the "Legislature has expressly declared its intent, we must accept the declaration. [Citation.]" (Tyrone v. Kelley (1973) 9 Cal.3d 1, 11, 106 Cal.Rptr. 761, 507 P.2d 65.) Moreover, even if "we were to find an ambiguity in the language of the [statute], the legislative intent is made absolutely plain by its declaration of intent in the uncodified part of the statute." (Barker v. Brown & Williamson Tobacco Corp. (2001) 88 Cal. App.4th 42, 49, 105 Cal.Rptr.2d 531, italics added, review den.)
The majority opinion nullifies the statutory provision declaring the Legislature's intent to protect employees from harassment by clientele and treats it as mere surplusage on the ground that an earlier legislative memorandum by Senator Diane E. Watson trumps the Legislature's subsequent statutory declaration of its intent. However, it is the Legislature's intent as *491 declared in the statute which must be given effect because "`[i]t is the language of the statute itself that has successfully braved the legislative gauntlet.'" (People v. Snook (1997) 16 Cal.4th 1210, 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808.)
The majority opinion's conclusion that an employer has no duty to protect an employee from harassment by a client or customer is contrary to California's protection of employees from environmental sexual harassment. The majority opinion unwarrantedly excuses an employer from the duty to take "all reasonable steps" (§ 12940, subds.(j)(1) & (k)) to prevent harassment from occurring if the perpetrator is a client or customer.
Similarly, the majority opinion fails to give any weight to the interpretation of the Department of Fair Employment and Housing (DFEH), the state agency which administers the law. (DFEH Enforcement Division Directive No. 207, issued Oct. 1, 1998.) Agency interpretation is an interpretive tool and it is appropriate to look to the DFEH's interpretation for guidance. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 7, 78 Cal.Rptr.2d 1, 960 P.2d 1031; Kelly v. Methodist Hospital of So. California (2000) 22 Cal.4th 1108, 1118, 95 Cal. Rptr.2d 514, 997 P.2d 1169.) The majority opinion's interpretation is also at odds with federal law, to which in this instance, this court should look for guidance.
Instead of liberally construing section 12940 to provide effective remedies to eliminate discriminatory practices as directed by the Legislature (§§ 12920, 12993, subd. (a)), the majority opinion has given the statute a narrow interpretation leading to absurd results the Legislature never intended.

I. AN EMPLOYER IS REQUIRED TO TAKE ALL REASONABLE STEPS TO PROTECT ITS EMPLOYEES FROM SEXUAL HARASSMENT IN THE WORK ENVIRONMENT, REGARDLESS OF WHETHER THE SOURCE OF THE HARASSMENT IS A SUPERVISOR. COEMPLOYEE, CLIENT OR CUSTOMER.

The pertinent statute, section 12940, makes it an unlawful employment practice "For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person,[[2]] because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." (§ 12940, subd. (j)(1), italics added.)
Further, subdivision (k) of section 12940 makes it an unlawful employment practice "For an employer, ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Italics added.)
The issue to be resolved is whether these provisions require an employer to take reasonable steps to prevent harassment by a client or customer. The resolution of this question is guided by certain *492 longstanding and well-established principles.

A. FEHA must be construed liberally to accomplish its purpose to eliminate discriminatory employment practices.

The FEHA proclaims the opportunity to be free from discriminatory practices in seeking, obtaining and holding employment "to be a civil right." (§ 12921, italics added; Brown v. Superior Court (1984) 37 Cal.3d 477, 486, 208 Cal.Rptr. 724, 691 P.2d 272.) Section 12920 declares "as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation." The FEHA "recognize[s] that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general." (§ 12920.) Hence, the FEHA declares as its "purpose ... to provide effective remedies that will eliminate these discriminatory practices." (§ 12920.)
To guide the courts, the Legislature directed that the FEHA is to be "construed liberally for the accomplishment of the purposes [thereof]." (§ 12993, subd. (a), italics added; accord Brown v. Superior Court, supra, 37 Cal.3d at p. 486, 208 Cal.Rptr. 724, 691 P.2d 272; Aguilar v. Avis Rent A Car System, Inc. (1999) 21 Cal.4th 121, 129, 87 Cal.Rptr.2d 132, 980 P.2d 846; Richards v. CH2M Hill, Inc. (2001) 26 Cal.4th 798, 819, 111 Cal.Rptr.2d 87, 29 P.3d 175.)

B. Section 12940 must be interpreted to effectuate the Legislature's expressly declared intent to protect employees from harassment by an employer's clientele.

The lead opinion acknowledges the FEHA's rule of liberality in construction but does not apply it. The lead opinion takes the position an employer has no duty under section 12940 to take reasonable steps to protect an employee from harassment by a client or customer. As explained below, the lead opinion's conclusion is at odds with the very language, purpose and history of the FEHA.

1. In the 1984 amendment, the Legislature specifically declared its intention to protect employees from harassment by clients; even if we were to find an ambiguity in section 12940, the legislative intent is made absolutely plain by the declaration of intent in the uncodified part of the statute.

Subdivisions (j)(1) and (k) of section 12940 do not specifically refer to clients or customers. Therefore, "we must rely on a cardinal principle of statutory construction: that absent `a single meaning of the statute apparent on its face, we are required to give it an interpretation based upon the legislative intent with which it was passed.' [Citation.]" (Friends of Mammoth v. Board of Supervisors (1972) 8 Cal.3d 247, 256, 104 Cal.Rptr. 761, 502 P.2d 1049.) The words "`of the statute themselves ... "generally provide the most reliable indicator of legislative intent."' [Citation.]" (People v. Farell (2002) 28 Cal.4th 381, 386, 121 Cal.Rptr.2d 603, 48 P.3d 1155.)
*493 Here, there is no uncertainty as to intent because, in amending section 12940 in 1984, the Legislature expressly declared its intent in the preamble to protect employees from harassment by an employer's "clientele." (Stats.1984, ch. 1754, § 1.) The preamble to the 1984 enactment states: "The Legislature finds and declares that it is the existing policy of the State of California to prohibit harassment and discrimination in employment on the basis of any protected classification. Such conduct whether intentional or unintentional is a violation of the civil rights of California citizenry and has been shown to decrease productivity in the workforce. It is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors and clientele. To further this intent, the Legislature enacts this act." (Stats.1984, ch. 1754, § 1, pp. 6403-6404, italics added; 32D West's Ann. Gov.Code (1992 ed.) Hist. & Statutory Notes foil. § 12940, pp. 209-210.)
This preamble to the 1984 legislation is uncodified.[3] However, said statute, which has been on the books for nearly two decades and specifically refers to the protection of employees from an employer's clientele, is to be given no less weight than the provisions which are codified at Government Code section 12900 et seq. As stated in County of Los Angeles v. Payne (1937) 8 Cal.2d 563, 574, 66 P.2d 658: "The codes of this state are simply a part of the statutory law of this state. They have no higher standing or sanctity than any other statute regularly passed by the legislature." (Accord, Crespin v. Kizer (1990) 226 Cal.App.3d 498, 510, fn. 8, 276 Cal. Rptr. 571.) In fact, the 1984 preamble has been specifically quoted in case law. (See Peralta Community College Dist. v. Fair Employment & Housing Com. (1990) 52 Cal.3d 40, 53-54, fn. 11, 276 Cal.Rptr. 114, 801 P.2d 357.)
Where the "Legislature has expressly declared its intent, we must accept the declaration. (Friends of Mammoth v. Board of Supervisors, [supra,] 8 Cal.3d [at pp.] 256-257 [104 Cal.Rptr. 761, 502 P.2d 1049].)" (Tyrone v. Kelley, supra, 9 Cal.3d at p. 11, 106 Cal.Rptr. 761, 507 P.2d 65, italics added; accord Rideout Hospital Foundation, Inc. v. County of Yuba (1992) 8 Cal.App.4th 214, 223, 10 Cal.Rptr.2d 141.)[4] Because the legislative intent is "expressly set forth" (Friends of Mammoth, supra, 8 Cal.3d at p. 256, 104 Cal. Rptr. 761, 502 P.2d 1049), our "task [is] considerably simplified...." (Ibid.; accord California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 15, 270 Cal. Rptr. 796, 793 P.2d 2.) Even if "we were to find an ambiguity in the language of the *494 [statute], the legislative intent is made absolutely plain by its declaration of intent in the uncodified part of the statute." (Barker v. Brown & Williamson Tobacco Corp., supra, 88 Cal.App.4th at p. 49, 105 Cal.Rptr.2d 531, italics added.)
Any question as to whether an employer has a duty to take reasonable steps to protect its employees from harassment by clients or customers should be laid to rest by reference to the Legislature's clear and unambiguous declaration of intent in the 1984 statute.

2. The legislative intent as expressed in the statutory preamble must prevail over any contrary statements made as the bill ran the legislative gauntlet.

It is a maxim of statutory construction that "`Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.'" (Reno v. Baird (1998) 18 Cal.4th 640, 658, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) In determining the Legislature's intent, we begin with the words of the statute as it was enacted because it is "`the language of the statute itself that has successfully braved the legislative gauntlet' [Citation.]" (People v. Snook, supra, 16 Cal.4th at p. 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808, italics added.)
Here, the lead opinion nullifies and treats as mere surplusage the Legislature's collective intent to protect employees from client harassment as set forth in the statutory preamble (Stats.1984, ch. 1754, § 1) on the ground the true intent, as expressed in a memorandum several months earlier by the bill's author, Senator Watson, was to the contrary. The lead opinion gives undue weight to the Watson memorandum and errs in rewriting the unambiguous language of the statutory preamble to conform to the Watson memorandum which preceded it.
As discussed below, as the bill worked its way through the legislative process, Senator Watson made inconsistent statements as to whether the bill would protect employees from customer harassment. Nonetheless, at the end of the process, the Legislature in its entirety enacted SB 2012 which, in its final form, included the preamble and protection of employees from client harassment. (Stats.1984, ch. 1754, § 1.) Any expression of legislative intent in the Watson memorandum cannot trump the Legislature's subsequently enacted declaration of its intent to protect employees from harassment by an employer's "clientele." (Ibid.; Tyrone v. Kelley, supra, 9 Cal.3d at p. 11, 106 Cal.Rptr. 761, 507 P.2d 65; accord Rideout Hospital Foundation, Inc. v. County of Yuba, supra, 8 Cal.App.4th at p. 223, 10 Cal. Rptr.2d 141.)
By way of background, the April 24, 1984 amendment to SB 2012, modifying section 12940, subdivision (i), stated it was an unlawful employment practice "For an employer, ... or any other person, because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age, to harass an employee or an applicant. Harassment of an employee or applicant by any person an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Sen. Bill No.2012 (1983-84 Reg. Sess.) as amended in Senate Apr. 24, 1984; first italics added, subsequent italics in original.)
With respect to the reason for this amendment, in a June 14, 1984 memorandum from Senator Watson to her fellow senators regarding SB 2012, she stated: *495 "The bill does not hold an employer responsible for outside harassment. This was amended out of the bill in the Senate Industrial Relations Committee."
Apparently, this change was in response to a concern raised by the California Manufacturers Association in a March 7, 1984 letter that "the employer's duty extends to preventing discrimination and harassment from without the work environment; it is impractical, at best, to assume an employer can take any measure to protect its employees." (Italics added.) The concern expressed by employers was that the bill would impose liability for harassment occurring outside the workplace, not that it would impose liability for harassment perpetrated by clients inside the workplace, as was the case here.
Further, the April 24, 1984 amendment in this regard merely replaced "any person" with "an employee" in the second sentence of section 12940, subdivision (i). As a consequence, the second sentence provided an employer is liable for coworker harassment only if the employer was on notice of the harassment and failed to take remedial action. However, this amendment left untouched the term "any other person" in the subdivision's first sentence. It is that sentence which makes it an unlawful employment practice for an employer "or any other person" to harass an employee on account of sex. (§ 12940, subd. (j)(1).)
Further, subsequent to the April 24, 1984 amendment of SB 2012 (which supposedly eliminated the protection from client harassment), on May 22, 1984, Senator Watson issued a statement to the effect that the bill would "codify" EEOC guidelines on sex discrimination. (SB 2012, Author's Statement, Senate Finance Committee, May 22, 1984.) At the relevant time in 1984, the EEOC guidelines at 29 C.F.R. 1604.11 provided in relevant part at subdivision (e): "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer ... knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Senator Watson's statement that SB 2012 would "codify" the EEOC guidelines supports the conclusion that the bill was intended to protect employees from harassment by an employer's clientele.[5]
Although the underlying legislative history may be somewhat ambiguous, the ultimate statute is not. As indicated, even if "we were to find an ambiguity in the language of the [statute], the legislative intent is made absolutely plain by its declaration of intent in the uncodified part of the statute." (Barker v. Brown & Williamson Tobacco Corp., supra, 88 Cal. *496 App.4th at p. 49, 105 Cal.Rptr.2d 531, italics added.) In the final enactment, the Legislature precisely stated its intent to protect employees from harassment by an employer's "clientele." (Stats.1984, ch. 1754, § 1.) It is the language of the statute as ultimately adopted which is controlling. Any conflict between the Watson legislative memorandum and the subsequently enacted statute must be resolved in favor of the statute which emerged at the end of the "`the legislative gauntlet.'" (People v. Snook, supra, 16 Cal.4th at p. 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808.) The lead opinion errs in going behind the unambiguous language of the preamble to abrogate the protection of employees from client harassment.
Therefore, the protection in section 12940, subdivision from harassment by "any other person" includes protection from harassment by clients or customers.[6]

C. Section 12940 mandates an employer to take all reasonable steps to prevent harassment.

"`Significance, if possible, should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citation.]'" (Renee J. v. Superior Court (2001) 26 Cal.4th 735, 744, 110 Cal.Rptr.2d 828, 28 P.3d 876.)
The conclusion that the protection in subdivision (j)(1) from harassment by "any other person" includes protection from harassment by clients or customers is bolstered by two other provisions in section 12940 requiring an employer to take all reasonable measures to prevent harassment of its employees.
Moving beyond the first and second sentences of section 12940, subdivision (j)(1),> discussed ante, the third sentence thereof flatly states: "An entity shall take all reasonable steps to prevent harassment from occurring." (Italics added.)
Separately, subdivision (k) of section 12940 makes it an unlawful employment practice "For an employer, ... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Italics added.)
The lead opinion excuses an employer from taking reasonable steps to prevent harassment when the harasser is a client or customer. However, these broad mandates to employers to take all reasonable steps to prevent harassment do not distinguish between harassment perpetrated by supervisors, coworkers or others. As stated in Carrisales v. Department of Corrections (1999) 21 Cal.4th 1132, 90 Cal. Rptr.2d 804, 988 P.2d 1083, "although section 12940(h)(1) [now (j)(1)] prohibits any `person' from harassing an employee, it imposes on the employer the duty to take all reasonable steps to prevent this harassment from occurring in the first place and to take immediate and appropriate [corrective] action when it is or should be aware of the conduct." (21 Cal.4th at p. 1140, 90 Cal.Rptr.2d 804, 988 P.2d 1083, first italics added.)[7]
*497 In finding that section 12940 does not require an employer to take corrective action in the case of harassment by a client or customer, the lead opinion reasons that while an employer can take disciplinary action when the harasser is an employee, the employer has no such power over clients or customers. This rationale is unpersuasive.
Subdivisions (j)(1) and (k) of section 12940 simply require an employer to take reasonable steps to prevent harassment from occurring. An employer is not powerless to control its place of business. For example, restaurants routinely display signs stating "No shirts, no shoes, no service." An employer is equally capable of refusing service to a client or customer who sexually harasses an employee, or otherwise acting to protect an aggrieved employee from further harassment.
Further, Code of Civil Procedure section 527.8 provides that where an employee has suffered unlawful violence (defined as including any assault or battery) in the workplace, or a credible threat of violence, an employer may seek injunctive relief on behalf of the employee prohibiting further violence or threats of violence. The lead opinion's conclusion that an employer has no responsibility to protect an employee from harassment by a client or customer rests in part on the faulty premise that there is nothing an employer can do in such a situation.
It is unnecessary to address what reasonable steps the employer here should have taken after being advised that Ernesto Rocha repeatedly had exposed himself to Raquel Salazar and had attacked her. The issue at bench is more fundamental: whether an employer has a duty under section 12940 to protect an employee from harassment when the harasser is a client or customer. Clearly, the statute imposes that duty.[8]

D. The lead opinion abrogates well-established, protections against environmental sexual harassment by exempting employers of any responsibility when the perpetrator is a client or customer.

It is rudimentary that an employee has a right to a work environment free of sexual harassment and an employer has a duty to protect an employee from a hostile work environment. The lead opinion ignores the fact that an employee's work environment may be peopled by individuals other than coworkers and supervisors and it thereby undermines California's well-established protection against a hostile work environment.
Section 12940, in two separate subdivisions, requires an employer to take "all reasonable steps" to prevent harassment from occurring. (§ 12940, subds.(j)(1) & (k).) The employer is under that duty regardless of whether the harasser is a supervisor, a coemployee, a client, a vendor, or "any other person" in the workplace. (§ 12940, subd. (j)(1).) The lead *498 opinion undermines the right of employees to a harassment-free work environment by carving out an unwarranted exception when the perpetrator of the harassment is a client or customer.
By way of background, the FEHA and the parallel provisions of title VII of the federal Civil Rights Act of 1964 recognize two theories of liability for sexual harassment claims. The first is quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. The second is hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment. (Kohler v. Inter-Tel Technologies (9th Cir.2001) 244 F.3d 1167, 1172; Mogilefsky v. Superior Court (1993) 20 Cal.App.4th 1409, 1414, 26 Cal.Rptr.2d 116.) This case deals solely with hostile work environment sexual harassment.
"`For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."' (Meritor Savings Bank v. Vinson [(1986)] 477 U.S. 57, 67 [, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 60].)[¶] ... The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's [fn. omitted] work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended. [Citation.] [¶] The factors that can be considered in evaluating the totality of the circumstances are: (1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred. [Citation.] [¶] ... [¶] ... `Evidence of the general work atmosphere, involving employees other than the plaintiff, is relevant to the issue of whether there existed an atmosphere of hostile work environment ....' [Citation.] Therefore, one who is personally subjected to offensive remarks and touchings can establish a hostile work environment by showing that harassment existed in the place of employment. ..." (Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 609-611, 262 Cal.Rptr. 842, italics added.)
A hostile environment may be created by a variety of circumstances, including unwelcome sexual advances or propositions (Meritor Savings Bank, supra, 477 U.S. at p. 65, 106 S.Ct. 2399), unwanted touching (Faragher v. Boca Raton (1998) 524 U.S. 775, 782, 118 S.Ct. 2275, 141 L.Ed.2d 662), verbal harassment (Fisher, supra, 214 Cal. App.3d at p. 611, 262 Cal.Rptr. 842), or displays of sexually explicit pictures. (Lipsett v. University of Puerto Rico (1st Cir.1988) 864 F.2d 881, 888.)[9]
*499 Because Salazar was personally subjected to offensive conduct on the bus to which she was assigned, she can establish a hostile work environment by showing that harassment existed in the place of employment. (Fisher, supra, 214 Cal.App.3d at pp. 610-611, 262 Cal.Rptr. 842.) The fact the source of the environmental harassment was Rocha, a client, did not relieve the employer of its duty to take "all reasonable steps" to prevent further harassment from occurring. (§ 12940, subds.(j)(1) & (k).)

E. The lead opinion errs in framing the issue as whether section 129-0 imposes liability upon an employer for harassment by a client or customer. An employer is liable under the statute for its own action or inaction in the face of customer harassment.

The gravamen of the lead opinion is that section 12940 does not impose liability upon an employer for harassment by a client or customer. The lead opinion mischaracterizes the issue.
There is no contention here that the employer is liable, by virtue of its status as the employer, for a client's harassment of Salazar. The issue is the employer's direct liability for its failure to protect Salazar from the client's harassment. Subdivisions (j)(1) and (k) of section 12940 require an employer to take "all reasonable steps" to prevent harassment from occurring. If an employer fails to comply with that duty, the employer is liable under section 12940 for its own action or inaction.

F. The lead opinion's interpretation leads to an absurd result, which is to be avoided.

"Principles of statutory construction are not rules of independent force, but merely tools to assist courts in discerning legislative intent." (Renee J. v. Superior Court, supra, 26 Cal.4th at p. 744, 110 Cal. Rptr.2d 828, 28 P.3d 876.) Where a statute is theoretically capable of more than one construction, a court must choose that which most comports with the intent of the Legislature. (Ibid.)
Here, the lead opinion, relying heavily on certain language in a memorandum by Senator Watson, concludes section 12940 does not make employers liable for sexual harassment by clients or customers. For reasons already discussed, particularly the Legislature's stated intent to protect employees from client harassment (Stats. 1984, ch. 1754, § 1), that conclusion is wrong.
However, even assuming the lead opinion's interpretation has some support in the statutory scheme, this court should examine whether the literal meaning of the statute comports with its purpose. "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.) Statutes are to be given "`a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity.'" (Renee J. v. Superior Court, supra, 26 Cal.4th at p. 744, 110 Cal. Rptr.2d 828, 28 P.3d 876.) An interpretation which "`frustrate] the manifest purposes of the legislation as a whole or [leads] to absurd results'" is to be avoided. (California School Employees Assn. v. Governing Board (1994) 8 Cal.4th 333, 340, 33 Cal.Rptr.2d 109, 878 P.2d 1321.)
An employee's work environment includes not only the location and instrumentalities *500 required to perform the job, but also the interactions required to complete the job tasks. For example, a hotel front desk clerk's work environment includes not only the physical location of the front desk, but also the interactions necessary to check patrons in and out of their rooms. Clients are part of the work environment and can create a hostile environment. However, the lead opinion's strained interpretation in effect defines the protected work environment as only those areas where there is no client contact.
Under the lead opinion's interpretation, the FEHA affords no protection to a waitress who repeatedly is groped by a customer and who reports the harassment to her employer, no matter how egregious the harassment. Despite being on notice, the employer in that situation has no duty to take any corrective action and is free to direct the employee to continue serving that customer. Likewise, in our fact situation, the lead opinion absolves the employer of any duty even after being advised that Rocha repeatedly exposed himself to Salazar and attacked her.
Further, the impact of the lead opinion's interpretation is not limited to the area of sexual harassment. Subdivision (j)(1) of section 12940 is not solely a sexual harassment provision. Subdivision (j)(1) also addresses harassment on the bases of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, ... age, or sexual orientation." Under the lead opinion's interpretation, the FEHA does not protect an employee from racial epithets by a customer or other such abuse.
The right to earn a living is not predicated upon the condition that one "`run a gauntlet of sexual abuse.'" (Meritor Savings Bank v. Vinson, supra, 477 U.S. at p. 67, 106 S.Ct. 2399.) The lead opinion, which in effect requires an employee to choose between quitting or submitting to the indignity of a customer's sexual, racial, or other harassment, is at odds with the manifest purposes of the FEHA and the intent of the Legislature.
The lead opinion's disregard of the word "clientele" in the statute (Stats.1984, ch. 1754, § 1) violates the basic canons of interpretation. The literal meaning of the words of a statute may be disregarded if necessary "to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (Silver v. Brown (1966) 63 Cal.2d 841, 845, 48 Cal.Rptr. 609, 409 P.2d 689.) Here, the literal words of the statute should be given effect, not disregarded. By disregarding the word "clientele" (Stats. 1984, ch. 1754, § 1), the lead opinion frustrates the FEHA's antidiscriminatory intent and creates absurd consequences which the Legislature never intended.
In seeking to ameliorate the severe impact of its ruling, the lead opinion points out that employees have non-FEHA remedies such as injunctive relief (Code Civ. Proc. § 527.6) against harassment by a client or customer. That is cold comfort to vulnerable employees who may be unwilling to institute legal proceedings against a client or customer for fear of antagonizing the employer. The FEHA was intended to provide "an efficient and expeditious avenue for elimination of discriminatory practices" (Peralta Community College District, supra, 52 Cal.3d at p. 55, 276 Cal.Rptr. 114, 801 P.2d 357) and was designed to be a comprehensive scheme for eliminating discriminatory employment practices (Brown v. Superior Court, supra, 37 Cal.3d at p. 485, 208 Cal.Rptr. 724, 691 P.2d 272; Esberg v. Union Oil Co. (2002) 28 Cal.4th 262, 266, 121 Cal.Rptr.2d 203, 47 P.3d 1069), with the aim of providing *501 "effective remedies that will eliminate [such] discriminatory practices." (§ 12920.) Forcing an aggrieved employee to seek recourse outside the FEHA advances none of these objectives.

G. Administrative interpretation further supports conclusion an employer has a duty to protect employees from harassment by clients or customers.

"Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court." (Yamaha Corp. of America v. State Bd. of Equalization, supra, 19 Cal.4th at p. 7, 78 Cal.Rptr.2d 1, 960 P.2d 1031.) Therefore, it is appropriate to look to the interpretation of the DFEH for guidance. (See Kelly v. Methodist Hospital of So. California, supra, 22 Cal.4th at p. 1118, 95 Cal.Rptr.2d 514, 997 P.2d 1169 [courts ordinarily give substantial weight to the Fair Employment and Housing Commission's construction of the statutes under which it operates].)
The DFEH has interpreted the statutory scheme to impose liability upon employers for outsider harassment. On October 1, 1998, the DFEH's Enforcement Division issued Directive No. 207 to address complaints involving "co-respondents or parties other than the primary respondent." The directive states in pertinent part: "Persons or entities outside the direct employer-employee relationship can also be held liable for harassment under the FEHA. An example of such a person would be a salesperson who harasses the victim while selling a product to the victim's employer. The employer for that salesperson may also be liable. [¶] The primary respondent's [i.e., the employer's] liability for outsider harassment is the same as that for non-supervisory harassment. The respondent is liable if it had actual or constructive knowledge of the outsider harassment, and failed to take immediate and appropriate corrective action. Ensure that such persons or entities are named in the body of the complaint." (DFEH Enforcement Division Directive, supra, § 4.A(2), p. 2, first italics added, original italics deleted.)[10]
Although this Enforcement Division Directive was not formally promulgated as a regulation, it is still entitled to consideration as an administrative interpretation of the pertinent statute. The lead opinion gives it none. Yamaha Corp. sets forth the standard of judicial review of an agency interpretation of law as follows: "Courts must ... independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court.... To quote the statement of the Law Revision Commission in a recent report, `The standard for judicial review of agency interpretation of law is the independent judgment of the court, giving deference to the determination of the agency appropriate to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb.1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (Yamaha Corp. of America, supra, 19 Cal.4th at pp. 7-8, 78 Cal. Rptr.2d 1, 960 P.2d 1031.)
Having independently construed the statute, ante, it appears the agency interpretation set forth in the Enforcement Division *502 Directive is consistent with the language and intent of section 12940.

H. Federal law further supports application of the FEHA to protect employees from client harassment.

Federal law is another interpretive tool which may inform our understanding of the FEHA.
"`Although the wording of the Fair Employment Housing Act and title VII of the federal Civil Rights Act of 1964 (see 42 U.S.C. § 2000e et seq.) differs in some particulars, the antidiscriminatory objectives and the overriding public policy purposes are identical and we refer to those federal decisions where appropriate.' [Citation.]" (Fisher v. San Pedro Peninsula Hospital, supra, 214 Cal.App.3d at p. 606, 262 Cal.Rptr. 842; accord Reno v. Baird, supra, 18 Cal.4th at pp. 647-648, 76 Cal. Rptr.2d 499, 957 P.2d 1333; Richards v. CH2M Hill, Inc., supra, 26 Cal.4th at p. 812, 111 Cal.Rptr.2d 87, 29 P.3d 175.)
For sexual harassment to be actionable under title VII, case law requires that it be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. (Harris v. Forklift Systems, Inc. (1993) 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295.) California courts have adopted the same standard in evaluating claims under the FEHA. (Aguilar, supra, 21 Cal.4th at p. 130, 87 Cal.Rptr.2d 132, 980 P.2d 846.)
Title VII's prohibition on sexual harassment is found in 42 U.S.C. § 2000e-2(a)(1), which provides in relevant part that "[i]t shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (Italics added.) This provision "evinces a congressional intent `"to strike at the entire spectrum of disparate treatment of men and women"' in employment." (Meritor Savings Bank v. Vinson, supra, 477 U.S. at p. 64, 106 S.Ct. 2399; accord Oncale v. Sun-downer Offshore Services, Inc. (1998) 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201.)
In implementing title VII, the EEOC promulgated a regulation which provides: "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such nonemployees." (29 C.F.R. § 1604.11(e), italics added.)[11]
As already discussed, after the April 24, 1984 amendment of SB 2012, which supposedly eliminated the protection from client harassment, Senator Watson issued *503 a statement to the effect that SB 2012 would "codify" the EEOC guidelines. (SB 2012, Author's Statement, Senate Finance Committee, May 22, 1984.) The EEOC guidelines, both then and now, protect employees from harassment by nonemployees, such as clients or customers. (29 C.F.R. § 1604.11(e).) It logically follows that SB 2012 likewise was intended to protect employees from client harassment.
Despite SB 2012's apparent intent to conform the FEHA to federal law in this regard, the lead opinion declines to be guided by federal authorities on the discrete point involved herein on the ground the distinct language of section 12940 evidences a legislative intent different from that of Congress. However, there does not appear to be any such difference in intent.
Title VII and the FEHA differ in the language used to prohibit sexual harassment. Title VII makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ... because of ... sex." (42 U.S.C. § 2000e-2(a)(1), italics added.) The FEHA, in turn, makes it an unlawful employment practice for "any ... person" to harass an employee on account of sex (§ 12940, subd. (j)(1), and requires an employer to take all reasonable steps to prevent harassment from occurring. (§ 12940, subds.(j)(1) & (k).)
Irrespective of the semantic differences between 42 U.S.C. § 2000(e) 2(a)(1) and section 12940, the antidiscriminatory objectives are the same. (Reno v. Baird, supra, 18 Cal.4th at p. 647, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) To that end, section 12940 broadly makes it an unlawful employment practice for "any ... person" to harass an employee on account of sex (§ 12940, subd. (j)(1), and requires an employer to take all reasonable steps to prevent harassment from occurring. (§ 12940, subds.(j)(1) & (k).) In interpreting any ambiguity in section 12940, this court should look to federal law, which does not relieve employers from liability when the harasser is a client or customer.
In refusing to be guided by federal law, the lead opinion also notes that unlike the EEOC regulation, the analogous DFEH regulation (2 CCR. § 7287.6) does not provide any protection from harassment by nonemployees, such as clients or customers. Nonetheless, the position of the DFEH, as set forth in its Enforcement Division Directive No. 207, discussed ante, is consistent with the EEOC's interpretation of title VII.
There is no persuasive reason to depart from the federal rule in this area. There is nothing in the language of section 12940 which evidences a legislative intent different from that of Congress. Therefore, in determining whether the FEHA protects employees from harassment by clients or customers, this court should be guided by federal law which clearly affords such protection.
I. Treatises are in accord.
Although obviously not binding on this court, a leading California practice guide, Chin, Cathcart, Exelrod & Wiseman, Cal. Prac. Guide: Employment Litigation (The Rutter Group 2001) likewise takes the position that an employer may be held liable for harassment of its employees by nonemployees. (Id., §§ 10:119-10:120, 10:410-10:411.) The text states in relevant part: "[10:119] Nonemployees: An employer may also be responsible for harassment of its employees by nonemployees (e.g., employer's customers or clients), where the employer is aware of the problem and fails to take immediate and appropriate corrective action. [See Lockard v. Pizza Hut, Inc. (10th Cir.1998) 162 F.3d 1062, 1072 *504 male restaurant patrons' harassment of waitress was severe enough to create hostile working environment; Powell v. Las Vegas Hilton Corp. (D. Nev. 1992) 841 F.Supp. 1024, 1028; and 29 C.F.R. § 1604.11(e)] [¶] [10:120] As a condition of her employment, female Employee, a lobby attendant in a large office building, was required to wear a skimpy, sexually revealing uniform that prompted offensive comments from male customers and visitors. Despite Employee's complaints, Employer refused to allow her to wear less revealing clothing. Employer was liable for hostile environment sexual harassment. [EEOC v. Sage Realty Corp. (S.D.N.Y.1981) 507 F.Supp. 599, 608]." (Chin, Cathcart, Exelrod & Wiseman, Cal. Prac. Guide: Employment Litigation, supra, §§ 10:119 10:120, p. 10-14.)
Admittedly, this California practice guide only cites federal authorities on the issue of employer liability for harassment by nonemployees. However, there is no caveat therein that state law is any different in this regard, or that state law in this area is an open question.
Similarly, the CEB advises that employers are liable for harassment by third parties and states: "The standard for sexual harassment involving nonemployees and that involving nonemployees is the same, i.e., an employer is liable if it knew or should have known of the harassment and failed to take prompt remedial action to stop it." (2 Advising California Employers (Cont.Ed.Bar 2d ed.2001) § 16.78, p. 1012.)
Consistent therewith is Eyres, Harassment Measures (July/August 2002) Los Angeles Lawyer, 39, 45, recommending that a law firm's sexual harassment policy should specify persons covered by the policy, "including partners, associates, managers, coworkers, third-party vendors, visitors, or clients." (Italics added.)

CONCLUSION
There is no uncertainty as to legislative intent because the Legislature declared its intent in the preamble to protect employees from harassment by an employer's "clientele." (Stats.1984, ch. 1754, § 1.) That declared, intent is binding on this court. (Tyrone v. Kelley, supra, 9 Cal.3d at p. 11, 106 Cal.Rptr. 761, 507 P.2d 65.) Even assuming any "ambiguity in the language of the [statute], the legislative intent is made absolutely plain by its declaration of intent in the uncodified part of the statute." (Barker v. Brown & Williamson Tobacco Corp., supra, 88 Cal.App.4th at p. 49,105 Cal.Rptr.2d 531.)
The lead opinion abrogates the Legislature's collective declaration of intent and treats it as mere surplusage, elevating over the statute the contents of a memorandum that Senator Watson issued several months earlier while the bill was running the "legislative gauntlet."
The lead opinion fails to give any weight to the interpretation of the DFEH, the state agency charged with administering the law. (DFEH Enforcement Division Directive No. 207, supra.)
The lead opinion also departs, without good reason, from federal law to which this court should look for guidance.
Instead of liberally construing section 12940 to provide effective remedies to eliminate discriminatory practices (§§ 12920, 12993, subd. (a)), the lead opinion has given the statute a narrow interpretation which will lead to absurd results at odds with the FEHA's antidiscriminatory intent. It makes no sense to have a comprehensive scheme protecting employees in the workplace from discrimination, with a huge gap leaving employees unprotected when the harasser is a nonemployee. The Legislature never intended that an employee such as Salazar be required *505 to choose between quitting her job and tolerating sexual assault by a customer.
To the extent the lead opinion is based on the concern that a contrary ruling will impose a hardship on business and will open the proverbial floodgates of litigation, the fact that employers are concurrently required by federal law to protect employees from client harassment, apparently without placing any undue burden on courts or employers, demonstrates that such concerns are unfounded.
For all these reasons, this court should hold an employer is liable under section 12940 for harassment by a client or customer if the employer had actual or constructive knowledge of the harassment and failed to take all reasonable steps to prevent further harassment.
II. Remaining issues.[***]
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part VI(B), (C), and (D) of the majority opinion and part II of the concurring and dissenting opinion.
[1] Unless otherwise specified, statutes in this opinion will refer to the Government Code.
[2] Section 12925, subdivision (d) defines "person" as, inter alia, "one or more individuals."
[3] It is true that the personal understanding of a legislator who voted for, or authored, a bill does not per se expose the Legislature's intent in enacting that bill. (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 589-590, 128 Cal. Rptr. 427, 546 P.2d 1371.) "A legislator's statement is entitled to consideration, however, when it is a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely [as] an expression of personal opinion." (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 700, 170 Cal.Rptr. 817, 621 P.2d 856.) Where there is evidence that the author's statements formed a part of the discussion or debate on the 1984 legislation, that it was made part of the legislative record, and that it was communicated to other legislators, it can be regarded as evidence of legislative intent. (See Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1157, fn. 6, 278 Cal.Rptr. 614, 805 P.2d 873.) Senator Watson, who introduced Senate Bill No.2012 wrote the June 14, 1984, memorandum while Senate Bill No.2012 was pending. The memorandum was addressed to all members of the California State Senate, addressing their concerns about Senate Bill No.2012 and, in the sentences quoted, describing the effect of amendments to Senate Bill No.2012 that had occurred during the legislative process. Thus it can be fairly regarded as a statement of legislative intent. Harris, supra, at p. 1157, fn. 6, 278 Cal.Rptr. 614, 805 P.2d 873.

The "Author's Statements" to Senate committees also reflect that employer liability for harassment by clients and customers was deleted from Senate Bill No.2012. An early version of Senate Bill No.2012 included employer liability for harassment by clients and customers, as reflected in an April 11, 1984 "Author's Statement" to the Senate Education Committee, which stated: "Equal Employment Opportunity Guidelines on sex discrimination and Fair Employment and Housing Regulations currently require an employer to take all steps necessary to prevent harassment and to implement appropriate sanctions. This bill will codify these regulations and specify actions required of an employer. [¶] Such action is necessary to protect employees from harassment by clientele as well as co-workers and supervisors."
By May 22, 1984, however, Senate Bill No.2012 no longer contained the prohibition against harassment by clientele, as evidenced by a May 22, 1984, Author's Statement to the Senate Finance Committee, which stated: "Equal Employment Opportunity Guidelines on sex discrimination and Fair Employment and Housing Regulations currently require an employer to take all steps necessary to prevent harassment and to implement appropriate sanctions. This bill will codify these regulations and specify actions required of an employer. [¶] This bill will expand the definition of `employer,' for harassment, to businesses having one or more employees, rather than the current five or more employees. This will insure that all workers are protected." (Emphasis in original.)
The May 22, 1984, Author's Statement omitted a sentence"Such action is necessary to protect employees from harassment by clientele as well as co-workers and supervisors"which appeared in the April 11, 1984, Author's Statement. As stated, infra, an April 24, 1984, amendment used harassment "by an employee" language, which remained unchanged in all later drafts of Senate Bill No.2012 and in the final statute.
[4] Compare the declarations of public policy which the Legislature did codify in the Act: sections 12920 and 12921.
[5] We have considered Barker v. Brown & Williamson Tobacco Corp. (2001) 88 Cal.App.4th 42, 105 Cal.Rptr.2d 531, and find that it differs from this appeal. In Barker, the court first analyzed the statute, reached a conclusion about its meaning, and then found that an uncodified statement of legislative intent supported that conclusion. (Id. at pp. 45-49, 105 Cal.Rptr.2d 531.) In this appeal, by contrast, the 1984 amendments to section 12940, subdivisions (j)(1) and (k) (then numbered subdivisions (i) and (j)) conflict with the uncodified 1984 preamble. Thus unlike Barker, in this appeal the 1984 uncodified preamble is not consistent with amendments to section 12940 as enacted. The 1984 uncodified preamble cannot be made consistent with section 12940, subdivision (j)(1) without rewriting the statute and adding to its provisions.
[6] Title 42 United States Code section 2000e-2(a)(1) states: "It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[J"
[7] Cases cited by Salazar which rely on 29 Code of Federal Regulations part 1604.11(e) are: Lockard v. Pizza Hut, Inc. (10th Cir.1998) 162 F.3d 1062, 1073; Rodriguez-Hernandez v. Miranda Velez (1st Cir., 1998) 132 F.3d 848, 854 (citing Puerto Rican law, P.R. Laws Ann. tit. 29, § 155f, following 29 C.F.R. § 1604.11(e)); Crist v. Focus Homes, Inc. (8th Cir.1997) 122 F.3d 1107, 1111; Powell v. Las Vegas Hilton Corp. (D.Nev.1992) 841 F.Supp. 1024, 1027-1028; and Magnuson v. Peak Technical Services, Inc. (E.D.Va.1992) 808 F.Supp. 500, 512-513.
[**] See footnote *, ante.
[1] All further statutory references are to the Government Code, unless otherwise indicated.
[2] Unless a different meaning clearly appears from the context, the FEHA defines "[p]erson" as including "one or more individuals." (§ 12925, subd. (d).)
[3] An uncodified statute is a statute which is in force but appears outside the codes. Uncodified statutes are published in the Statutes and Amendments to the Codes. (See Cal. Style Manual (4th ed.2000) § 2:13, p. 56.) Here, chapter 1754 of the 1984 Statutes consists of six sections: section 1, the preamble's statement of intent, which is uncodified; and sections 2 through 6, which are codified at various sections in the Government Code. (Stats. 1984, ch. 1754, §§ 1-6, pp. 6403-6409.)
[4] Legislative intent may be gleaned from a statute's preamble and directives. (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1118, 81 Cal.Rptr.2d 471, 969 P.2d 564.)
[5] In support of its position that an employer is not responsible for customer harassment, the lead opinion also relies on a June 22, 1984 letter from Senator Watson to the California Manufacturer's Association. Said letter is not properly before this court. Absent a showing that a copy of the letter was circulated to the rest of the Legislature, the letter is not properly received as evidence of the collective intent. As stated in McDowell v. Watson (1997) 59 Cal.App.4th 1155, 69 Cal. Rptr.2d 692, "Generally, the motive or understanding of an individual legislator is not properly received as evidence of that collective intent, even if that legislator was the author of the bill in question. [Citation.] Unless an individual legislator's opinions regarding the purpose or meaning of the legislation were expressed in testimony or argument to either a house of the Legislature or one of its committees, there is no assurance that the rest of the Legislature even knew of, much less shared, those views. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856].)" (59 Cal.App.4th at p. 1161, fn. 3, 69 Cal.Rptr.2d 692.)
[6] If the Legislature did not intend to protect employees from harassment by an employer's "clientele" (Stats.1984, ch. 1754, § 1), such a correction would be a matter for the Legislature, not this court. (See International Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc. (1999) 69 Cal. App.4th 287, 304, fn. 6, 81 Cal.Rptr.2d 456, and cases cited therein.)
[7] The issue in Carrisales was whether the FEHA makes a nonsupervisory employee personally liable to a coworker for sexual harassment. (21 Cal.4th at p. 1134, 90 Cal.Rptr.2d 804, 988 P.2d 1083.)
[8] In a supplemental brief, Diversified Paratransit, Inc. emphasizes that Rocha is developmentally delayed, and argues that holding employers liable under the FEHA for harassment by clients or customers will result in the denial of transportation and other basic services to such persons. However, the balancing of the competing interests of employees and the developmentally disabled is not properly before this court. "Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. [Citations.]" (Carson v. Facilities Development Co. (1984) 36 Cal.3d 830, 839, 206 Cal. Rptr. 136, 686 P.2d 656.) Here, nonsuit on the FEHA claim was sought and obtained on the ground an employer is not liable when a client or customer sexually harasses an employee. Therefore, the narrow issue before us is whether section 12940 imposes a duty upon the employer when the harasser is a client or customer.
[9] In Herberg v. California Institute of the Arts (2002) 101 Cal.App.4th 142, 124 Cal.Rptr.2d 1, an employee (joined by two family members who were also employees) sued an art institute for hostile work environment sexual harassment under section 12940 after she was depicted in a vulgar and sexually oriented drawing prepared by two students at the institute. Herberg affirmed a summary judgment in favor of the institute, finding the undisputed facts established the alleged harassment was not sufficiently severe or pervasive to alter the conditions of the plaintiffs' employment and create a hostile work environment. (Herberg, supra, at pp. 144-145, 124 Cal. Rptr.2d 1.) It should be noted that in Herberg, the perpetrators of the alleged harassment were students, not supervisors or coemployees. However, there was no contention therein that the employer was absolved of any duty merely because the alleged harassers were nonemployees.
[10] The DFEH directive is an official act of an executive department agency and is properly the subject of judicial notice. (Evid. Code, §§ 452, subd. (c), 459.)
[11] Cases applying 29 C.F.R. § 1604.11(e) include: Crist v. Focus Homes, Inc. (8th Cir. 1997) 122 F.3d 1107, 1108-1111 [operator of residential facility for developmentally disabled individuals may be held liable for failure to respond appropriately to sexual harassment of caregivers by a mentally incapacitated resident]; Folkerson v. Circus Circus Enterprises, Inc. (9th Cir. 1997) 107 F.3d 754, 756 [employer may be held liable for sexual harassment of employee by casino patron where employer ratifies or acquiesces in the conduct]; Lockard v. Pizza Hut, Inc. (10th Cir.1998) 162 F.3d 1062, 1073-1075 [employer liable for hostile work environment for failing to remedy or prevent sexual harassment of waitress by customers].
[***] See footnote *, ante.