[No. B142840. Second Dist., Div. Three. Mar. 30, 2004.]

RAQUEL SALAZAR, Plaintiff and Appellant, v.
DIVERSIFIED PARATRANSIT, INC., et al., Defendants and Respondents.

## COUNSEL

Wiezorek, Rice & Dieffenbach, Susan Graham Lovelace; Wiezorek & Rice and Steven C. Rice for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Louis Verdugo, Assistant Attorney General, Catherine Z. Ysrael and Suzanne M. Ambrose, Deputy Attorneys General, for Attorney General, Bill Lockyer as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Jeffrey K. Winikow, Jeffrey K. Winikow; Bornn & Surls and Nancy Bornn, for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Orren & Orren and Tyna Thall Orren for Janis Adams as Amicus Curiae on behalf of Plaintiff and Appellant.

Graves & King, Patrick L. Graves, Harvey W. Wimer III and Dennis J. Mahoney for Defendants and Respondents.

Lewis, D'Amato, Brisbois & Bisgaard and Christopher D. Lockwood for California Manufacturers and Technology Association as Amicus Curiae on behalf of Defendants and Respondents.

Jones Day and Elwood Lui for Los Angeles Unified School District as Amicus Curiae on behalf of Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Raquel Salazar (Salazar) appeals a judgment following a grant of nonsuit in favor of her former employer, defendant and respondent Diversified Paratransit, Inc. (Diversified), and her former supervisor, defendant and respondent Rudy Vokoun (Vokoun).

The evidence showed Salazar, an employee of Diversified, repeatedly was subjected to sexual harassment by a client of Diversified, and she reported the conduct to her employer which failed to take any corrective action. Salazar quit and sued. The trial court granted nonsuit in favor of defendants on the ground the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)[1] does not protect an employee from sexual harassment by an employer's client or customer.

This court, in a two-to-one decision, upheld that ruling. Salazar then filed a petition for review which the Supreme Court granted. While the matter was pending in the court above, the Legislature adopted Assembly Bill No. 76 (2002–2003 Reg. Sess.) (Assem. Bill 76), with the stated intent of clarifying the law and abrogating this court's decision in the matter. The Supreme Court then transferred the matter back to this court for reconsideration in light of the new enactment. *We conclude Assem. Bill 76 is a clarification of existing law and therefore governs this case.* Accordingly, we remand the matter to the trial court for further proceedings, to be guided by the new enactment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

Diversified engages in the business of transporting developmentally disabled adults and children from their homes and care providers to day care centers and schools. Vokoun supervised operations and employees at Diversified's Long Beach terminal.

Three male drivers at Diversified had filed written reports concerning misconduct by a passenger, one Rocha, beginning on October 11, 1994.

---

[1] Subsequent unspecified statutory references are to the Government Code.

[2] On appeal from a judgment of nonsuit, the evidence is viewed in the light most favorable to plaintiff's case, resolving all presumptions, inferences and doubts in plaintiff's favor. (*Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.* (2001) 88 Cal.App.4th 439, 444 [105 Cal.Rptr.2d 856].)

These reports involved Rocha's refusal to stay seated on the bus and his refusal to comply with a driver's request to relinquish a knife Rocha had in his possession. Three female drivers filed reports of incidents in which Rocha exposed himself to those drivers. Thus, Vokoun and Diversified knew of these three previous incidents involving Rocha exposing himself to female bus drivers.

Diversified hired Salazar as a bus driver in late August or early September 1997. Salazar drove a few days with another driver, David, to learn the route. Rocha was a passenger on that route. On days when David taught her the route, Rocha touched Salazar's hair and wanted to be by her side. When Rocha left his seat, David told Salazar to take him back to his seat. She did, and put his seat belt on, but Rocha again left his seat. When she again put him back in his seat, he stared at her and made her feel uncomfortable. He called her "bonita," meaning beautiful. He grabbed her purse several times and said he wanted money even though David told him not to do that. Salazar was scared and felt uncomfortable around Rocha from the first day she met him. She nonetheless started driving the bus on the route without David. When she found out Rocha was going to be a passenger, she asked the dispatcher if she had to drive him. The dispatcher said, "I guess."

When Rocha rode on Salazar's bus, he got out of his seat and caused Salazar to have to stop the bus and place him back in his seat and fasten his seat belt. After a few days, Salazar reported problems with Rocha to David, the dispatcher, and Vokoun, and asked for a different route because she did not like how Rocha looked at her and wanted to touch her all the time.

Salazar filed written reports of two incidents of Rocha's misconduct. On September 2, 1997, Rocha stood up and Salazar stopped the bus to put him back in his seat. Salazar saw that Rocha's zipper and belt were down and his genitals were exposed. Rocha tried to grab her arms. Salazar put him back in his seat and continued on her route. Salazar reported the incident in writing to Diversified.

After the September 2, 1997, incident, Salazar drove the same route with no male assistant. For the next few days, although he did not expose himself, Rocha continued to misbehave, which made Salazar feel scared and apprehensive. On September 8, 1997, a second incident occurred while Salazar had stopped the bus and was waiting to pick up another passenger. Looking in her mirror, Salazar saw Rocha coming toward her. Salazar tried to get out of her seat, but Rocha attacked her and exposed his genitals. Salazar yelled for help from nearby drivers who were waiting for passengers. She hit Rocha with her arm to fight against him. Rocha touched her all over and tried to put his hands under her shirt and shorts. Salazar scratched his face, honked the horn,

and tried to kick him. She spoke into the radio, "[Rocha] is attacking me." Rocha was on top of her. He touched her with his hands and rubbed his face against her face. The attack ended when two male drivers from other buses came onto Salazar's bus.

Salazar telephoned Vokoun and told him what happened. Vokoun came and drove Rocha home.

Salazar submitted a written report about this second incident. Within two days, Salazar decided she could no longer work for Diversified and quit.

### 2. Proceedings.

#### a. Trial court proceedings.

In the operative complaint, Salazar alleged four causes of action against Diversified and Vokoun: sexual harassment in violation of the FEHA (§ 12900 et seq.), and the California Constitution (Cal. Const., art. I, § 8); constructive discharge in violation of public policy; intentional infliction of emotional distress; and negligent infliction of emotional distress.

The case was tried to a jury. At the conclusion of Salazar's case, the trial court granted nonsuit in favor of defendants, ruling the FEHA does not protect an employee from sexual harassment by an employer's client or customer. Salazar appealed.

#### b. This court affirmed, upholding the trial court's interpretation of the statutory scheme.

On October 28, 2002, this court, in *Salazar v. Diversified Paratransit, Inc.* (*Salazar*), a two-to-one decision, upheld the trial court's grant of nonsuit, ruling that the FEHA does not protect an employee from harassment by an employer's clientele.

#### c. Grant of review by Supreme Court.

On January 22, 2003, the Supreme Court granted a petition for review by Salazar. It specified the issue to be determined was "whether it is an unlawful employment practice under the [FEHA] 'for an employer . . . to fail to take all reasonable steps necessary to prevent . . . harassment' of an employee by a non-employee (*id.*, § 12940, subd. (k)), and accordingly whether an employer is required by the act to 'take all reasonable steps to prevent [such] harassment' (*id.*, § 12940, subd. (j)(1))."

d. *The adoption of Assem. Bill 76.*

On December 23, 2002, less than two months after the issuance of this court's decision in *Salazar*, Assem. Bill 76 was introduced in the Legislature to abrogate the *Salazar* decision. The bill passed both houses, and on October 3, 2003, it was approved by the Governor and filed with the Secretary of State.

Assem. Bill 76 amended subdivision (j)(1) of section 12940 to include the following provision: "An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (Stats. 2003, ch. 671, § 1.)

Assem. Bill 76 also includes the following declaration of legislative intent: "It is the intent of the Legislature in enacting this act to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in *Salazar v. Diversified Paratransit, Inc.* (2002) 103 Cal.App.4th 131 [126 Cal.Rptr.2d 475]." (Stats. 2003, ch. 671, § 2.)

e. *The Supreme Court's transfer of Salazar back to this court in light of Assem. Bill 76.*

On November 19, 2003, the Supreme Court transferred the matter back to this court "for reconsideration in light of the enactment of Chapter 671 of the Statutes of 2003."

## ISSUE

The question now presented is whether the new enactment is simply a clarification of existing law, so as to apply to the instant case.

## DISCUSSION

1. *Overview.*

In this court's previous decision, there was a difference of opinion with respect to the interpretation of the 1984 amendment to section 12940, declaring it an unlawful employment practice for an employer "or any other person" to harass an employee. (Stats. 1984, ch. 1754, § 2, p. 6406.)

In direct response to *Salazar*, the Legislature amended section 12940, subdivision (j)(1), to *expressly* hold employers liable for sexual harassment of

employees by "nonemployees," provided the employer knew or should have known of the conduct and failed to take immediate and appropriate corrective action. In enacting this latest amendment, the Legislature declared its "intent . . . to construe and clarify the meaning and effect of *existing law* and to reject the interpretation given to the law in *Salazar.*" (Stats. 2003, ch. 671, § 2, italics added.)

Following the 2003 amendment to section 12940, the Supreme Court transferred *Salazar* back to this court "for reconsideration in light of the enactment of Chapter 671 of the Statutes of 2003."

The issue therefore presented is the appropriate disposition of *Salazar* in light of the 2003 amendment to section 12940 and the Supreme Court's transfer order.

### 2. *General principles.*

Of assistance in the resolution of the issue is the Supreme Court's decision in *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232 [62 Cal.Rptr.2d 243, 933 P.2d 507], which set forth controlling canons of statutory interpretation.

A legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute in that ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts. (*Western Security Bank, supra,* 15 Cal.4th at p. 244.)

However, an amendment " ' "which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." [Citation.]' " (*Western Security Bank, supra,* 15 Cal.4th at pp. 243–244.) Here, Assem. Bill 76, abrogating *Salazar,* was introduced on December 23, 2002, less than two months after the issuance of *Salazar.*

It is recognized "there is little logic and some incongruity in the notion that one Legislature may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies. [Citation.] Nevertheless, the Legislature's expressed views [as here] on the prior import

of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security Bank, supra,* 15 Cal.4th at p. 244.)

Therefore, a " 'subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act.' [Citation.] Moreover, even if the court does not accept the Legislature's assurance that an unmistakable change in the law is merely a 'clarification,' the declaration of intent may still effectively reflect the Legislature's purpose to achieve a retrospective change. [Citation.] Whether a statute should apply retrospectively or only prospectively is, in the first instance, a policy question for the legislative body enacting the statute. [Citation.] Thus, where a statute provides that it clarifies or declares existing law, 'it is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection thereto.' [Citations.]" (*Western Security Bank, supra,* 15 Cal.4th at pp. 244–245, italics added.) In sum, "when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us. [Citation.]" (*Id.,* at p. 243.)

The Legislature's declared intent to clarify existing law (Stats. 2003, ch. 671, § 2), application of the principles of *Western Security Bank, supra,* 15 Cal.4th 232, and the Supreme Court's order transferring *Salazar* back to this court in light of the legislative enactment, inform the resolution of the issue herein.

3. *Section 12940 previously was somewhat ambiguous with respect to an employer's liability for clientele harassment; Assem. Bill 76 clarified the statute to expressly hold an employer liable for harassment by a nonemployee.*

■ In adopting Assem. Bill 76, the Legislature declared its intent to "clarify the meaning and effect of existing law and to reject the interpretation given to the law in *Salazar*." (Stats. 2003, ch. 671, § 2.) As indicated, Assem. Bill 76 was adopted swiftly after this controversy arose concerning the proper interpretation of section 12940. Therefore, it is appropriate to accept the Legislature's declaration in Assem. Bill 76 that rather than effecting a substantive change, it was merely clarifying section 12940. (*Western Security Bank, supra,* 15 Cal.4th at pp. 243–244.)

Further, as reflected in the differences of opinion expressed in *Salazar* with respect to the proper interpretation of section 12940, the statute was somewhat ambiguous and in need of clarification.

On the one hand, the *preamble* to the 1984 amendment to section 12940 specifically referred to protecting employees from sexual harassment by an employer's "*clientele*." (Stats. 1984, ch. 1754, § 1, pp. 6403–6404, italics added.) This was a point stressed in Justice Klein's concurring and dissenting opinion when the matter was previously before us.

On the other hand, the legislative history leading up to the 1984 amendment provided support for a contrary, more restrictive, interpretation of section 12940. The April 24, 1984 amendment to Senate Bill No. 2012 (1983–1984 Reg. Sess.) (Sen. Bill 2012), modifying section 12940, subdivision (i), stated it was an unlawful employment practice "For an employer, . . . *or any other person,* because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age, to harass an employee or an applicant. Harassment of an employee or applicant by ~~any person~~ *an employee* other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Sen. Amend. to Sen. Bill 2012 (1983–1984 Reg. Sess.) Apr. 24, 1984, first italics added, subsequent italics in original.)

With respect to the reason for this amendment, Senator Watson stated in a June 14, 1984 memorandum to her fellow senators regarding Sen. Bill 2012: "*The bill does not hold an employer responsible for outside harassment.* This was amended out of the bill in the Senate Industrial Relations Committee." (Italics added.)

The lead opinion in *Salazar* also relied on a June 22, 1984 letter from Senator Watson to Michael J. Breining, Legal Counsel for the California Manufacturers Association, stating: "Your letter expresses concern over employer's responsibility for *customer harassment.* This provision has been amended out of the bill."

The lead opinion in *Salazar* focused on these statements by Senator Watson in concluding section 12940 did not protect employees from customer harassment.

Obviously, there was a glaring inconsistency between the preamble's specific reference to protecting employees from sexual harassment by an employer's "clientele" (Stats. 1984, ch. 1754, § 1, pp. 6403–6404) and Senator Watson's assertions that protection from outside harassment or customer harassment had been amended out of the bill. The lead opinion in *Salazar* treated the "clientele" language in the preamble as a drafting error and adopted Senator Watson's understanding of Sen. Bill 2012.

Conversely, the concurring and dissenting opinion in *Salazar* placed particular emphasis on the preamble, gave no weight to Senator Watson's

personal views, and concluded section 12940 held an employer liable for sexual harassment of an employee by the employer's clientele. The concurring and dissenting opinion in *Salazar* reasoned that any conflict between the Watson legislative memorandum and the subsequently enacted statute must be resolved in favor of the statute because it is the language of the statute itself that has successfully braved " 'the legislative gauntlet.' " (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].)

■ The Legislature then weighed in on the issue and clarified section 12940 to eliminate this ambiguity. It expressly abrogated the *Salazar* majority's interpretation of section 12940 and amended the statute to specify that an employer is liable for sexual harassment of an employee by a nonemployee under certain circumstances.

We conclude Assem. Bill 76 is nothing more than a clarification of section 12940. Thus, an employer may be held liable under the FEHA for sexual harassment by clients or customers. Because Assem. Bill 76 is a clarification of section 12940, rather than a substantive change, it applies to this case. Therefore, the matter shall be remanded to the trial court for further proceedings, guided by the Legislature's clarification of the statute.

## DISPOSITION

The judgment and postjudgment orders re attorney fees and costs are reversed and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Salazar shall recover costs on appeal.

Aldrich, J., concurred.

**KITCHING, J.,** Concurring and Dissenting.—I respectfully dissent.

In 1997, Rocha, a client of defendant Diversified Paratransit, sexually harassed plaintiff Salazar. Diversified Paratransit and its employees did not sexually harass Salazar. In 1984, the Legislature rejected a proposed amendment to Government Code section 12940,[1] the statute at issue here, which would have made employers like Diversified Paratransit liable for sexual harassment by clients like Rocha. Therefore in 1997, when Rocha sexually harassed Salazar, the law gave no notice to Diversified Paratransit that it could be liable for Rocha's actions. Although the Legislature stated that Assembly Bill No. 76 (2002–2003) merely "clarified" existing law, abundant

---

[1] Unless otherwise specified, statutes in this dissenting opinion will refer to the Government Code.

evidence shows that Assembly Bill No. 76 made significant, substantive changes in the law, expanding the scope of employer liability and the scope of a plaintiff's cause of action against an employer for sexual harassment by its clients under the California Fair Employment and Housing Act. The Legislature cannot change "the rules of the game" to make employers liable for past sexual harassment of employees by nonemployees, customers, or clients. Indeed, the Legislature disregarded its ·own recognition of this principle in section 12940, subdivision (j)(2). For these reasons Assembly Bill No. 76 should apply prospectively only, should have no effect on this appeal, and should not alter this court's decision filed on October 28, 2002. The judgment for defendants should be affirmed and the order awarding attorney fees to defendants should be reversed.

    1.   *Assem. Bill 76 Did Not "Clarify" the Law and the Legislature Did Not Attempt to Make Assembly Bill No. 76 Retroactive. The Substantive Changes in Assem. Bill 76 Should Apply Prospectively Only*

As relevant to his appeal, Assembly Bill No. 76 added two sentences to subparagraphs in subdivision (j) of section 12940,[2] and added an uncodified statement of legislative intent as section 2, chapter 671 of the Statutes of 2003.[3]

The question is whether Assembly Bill No. 76 applies to conduct occurring in 1997, or whether the amendment applies only to conduct occurring after

---

[2] Section 12940 now states: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] . . . [¶] (j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. *An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees shall be considered.* An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." (Italics added.) The two amended sentences, in italics, derive from an EEOC regulation on sexual harassment. (29 C.F.R. § 1604.11(e) (1972).)

[3] Assembly Bill No. 76 added an uncodified section 2 to chapter 671, Statutes of 2003: "SEC. 2. It is the intent of the Legislature in enacting this act to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in Salazar v. Diversified Paratransit, Inc. (App. 2 Dist. 2002) 126 Cal.Rptr.2d 475 [103 Cal.App.4th 131]."

January 1, 2004, the date Assembly Bill No. 76 became effective. I find the latter; Assembly Bill No. 76 applies only prospectively.

A. *Rules Governing Prospective or Retroactive Application of Statutory Amendments and the Interpretation of a Legislative Declaration That an Amendment Construes and Clarifies Existing Law*

The Legislature stated that Assembly Bill No. 76 construed and clarified the meaning and effect of existing law. The Legislature did not declare any intent to make Assem. Bill 76 retroactive.

A retroactive law affects rights, obligations, acts, transactions, and conditions which exist or are performed before the statute takes effect. A statute which increases a party's liability for past conduct is a retroactive statute. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751].)

The theory against applying a statute retroactively is that parties affected have no notice of a new law affecting conduct already past. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 793 [72 Cal.Rptr.2d 624, 952 P.2d 641].) The California Supreme Court has stated that " 'the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." ' " (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at pp. 840–841, quoting *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265 [128 L.Ed.2d 229, 114 S.Ct. 1483].) California courts presume that statutes operate prospectively unless the Legislature clearly manifests its contrary intent. The presumption of prospective application of a statute will govern unless: (1) the statute contains an express retroactivity provision; or (2) extrinsic sources make it very clear that the Legislature must have intended retroactive application. (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at p. 841.)

"A corollary to these rules is that a statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507], italics omitted.) "Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Ibid.*) Where an unmistakable substantive change in the law has occurred, however, the court is not bound to accept a legislative statement that an amendment merely clarifies and restates the original statutory terms. (*Riley v. Hilton Hotels Corp.* (2002) 100 Cal.App.4th 599 [123 Cal.Rptr.2d 157], citing *California Emp. etc. Com. v.*

*Payne* (1947) 31 Cal.2d 210, 214 [187 P.2d 702]; *Jarvis v. Cory* (1980) 28 Cal.3d 562, 570 [170 Cal.Rptr. 11, 620 P.2d 598]: "[W]here a declaration is in irremediable conflict with a statute's substantive provisions, courts will not blindly bow to the Legislature's stated interpretation.")

The question in this case is whether the Legislature, in enacting Assembly Bill No. 76, construed and clarified the meaning and application of existing law or substantively changed it.

> B. *The Presumption That Statutory Amendments Have Prospective Effect Governs This Appeal*
>
> i. *Assembly Bill No. 76 Substantively Changed Section 12940, Subdivision (j)(1) by Expanding the Scope of Employer Liability for Sexual Harassment*

Abundant evidence shows that Assembly Bill No. 76 did not construe and clarify existing law, and instead substantively revised section 12940, subdivision (j)(1) to expand the scope of employer liability for sexual harassment.

The two new sentences in Assembly Bill No. 76 derive from an Equal Employment Opportunity Commission (EEOC) regulation concerning sexual harassment. (29 C.F.R. § 1604.11(e) (1972).) In 1984, the Legislature incorporated other parts of this EEOC regulation into section 12940, subdivision (j)(1).[4] The Legislature's 1984 amendments, however, did not incorporate the two sentences from the EEOC regulation which Assembly Bill No. 76 has now added to section 12940, subdivision (j)(1). Those two sentences did not appear in subdivision (j)(1) until Assembly Bill No. 76 added them, and previous versions of subdivision (j)(1) provided no basis for inferring their presence. That the Legislature rejected the option of incorporating these two sentences in 1984, and did not incorporate them into the statute until it enacted Assembly Bill No. 76 in 2003, constitutes evidence that Assembly Bill No. 76 substantively changed the statute rather than merely clarifying and construing it.

In addition, a bill proposed to the Legislature in 1984 would have made an employer liable for "harassment of an employee or applicant *by any person*," not just by co-employees or supervisors. (Sen. Bill No. 2012, as introduced Feb. 16, 1984, italics added.) An amendment to the proposed bill, however, specifically narrowed an employer's potential liability, and the Legislature ultimately enacted an amended version of the bill prohibiting "[h]arassment of an employee or applicant *by an employee*." (Stats. 1984, ch. 1754, § 2;

---

[4] The subdivision now numbered section 12940, subdivision (j)(1) was numbered section 12940, subdivision (i) in 1984.

italics added.) Notably, the author of the 1984 statute, Senator Diane Watson, specifically acknowledged that the statute enacted did not make employers liable for customer harassment. In 2003, Assembly Bill No. 76 broadened employers' liability by specifying that pursuant to subdivision (j)(1), an employer may now be responsible for "the acts of *non-employees*, with respect to *sexual harassment* of employees." (Italics added.) By adding sexual harassment of employees by nonemployees, such as customers and clients, to section 12940, subdivision (j)(1), Assembly Bill No. 76 newly expanded the scope of employer liability.

Assembly Bill No. 76 significantly revises section 12940, subdivision (j)(1) in another way. Former section 12940, subdivision (j)(1) and (3) did not distinguish between various forms of harassment. These statutes made it an unlawful employment practice for another employee, or for an employer, to harass an employee because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation. By comparison to this broad liability for any form of prohibited harassment by an employer or an employee, Assembly Bill No. 76 singles out sexual harassment and makes an employer responsible only for a nonemployee's sexual harassment of an employee. Former section 12940, subdivision (j)(1) did not treat sexual harassment differently from the numerous other forms of prohibited harassment; Assembly Bill No. 76 does, and thus does more than simply construe and clarify existing law. By imposing new duties and obligations on employers, Assembly Bill No. 76 added a new basis of employer liability for sexual harassment by a nonemployee, such as a client or customer.

Assembly Bill No. 76 also added new conditions which apply only to employer responsibility for nonemployees' sexual harassment of employees. Assembly Bill No. 76 did not apply these conditions to other forms of harassment by nonemployees. When it made employers responsible for nonemployees' sexual harassment, Assembly Bill No. 76 required that the employer, or its agents or supervisors, knew or should have known of the conduct and failed to take immediate and appropriate corrective action. Assembly Bill No. 76 also added the element of the employer's control and other legal responsibility to nonemployees' conduct by stating, in section 12940, subdivision (j)(1): "In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees shall be considered." Again, the Legislature treated sexual harassment differently. Further, these new requirements and conditions upon employer responsibility were not present in and could not be inferred from prior section 12940, subdivision (j)(1). These additions in Assembly Bill No. 76 constituted a substantive change and not a clarification.

ii. *The 2003 Legislature Cannot Validly Declare the Intent of a Previous Legislature in Enacting the 1984 Amendment*

"[W]hen the Legislature declares that an amendment is intended simply to 'clarify' the meaning of a preexisting version of a statute, such a declaration is not determinative as to the meaning of the earlier version." (*People v. Cruz* (1996) 13 Cal.4th 764, 781 [55 Cal.Rptr.2d 117, 919 P.2d 731].) Determining the meaning of statutes is a judicial function. To determine the scope of an earlier statute, a court must ascertain from pertinent circumstances and considerations whether the later amendment modifies, or clarifies, the earlier provision. (*Ibid.*)

"The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law. [Citations.] This is especially true when . . . such declared intent is without objective support in either the language or history of the legislation[.]" (*Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 52 [276 Cal.Rptr. 114, 801 P.2d 357].) The length of time between the 1984 amendment and the 2003 amendment suggests that the Legislature's declaration of its earlier intent should be disregarded. "[T]here is little logic and some incongruity in the notion that one Legislature may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies." (*Western Security Bank v. Superior Court, supra*, 15 Cal.4th at p. 244; see also *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1233 [106 Cal.Rptr.2d 490], and *People v. Martinez* (1987) 188 Cal.App.3d 1254, 1259 [233 Cal.Rptr. 877].) That only two legislators who voted on the 1984 amendments also voted on the 2003 amendments underscores this point.[5]

iii. *Legislative History Shows That Assembly Bill No. 76 Substantively Changed Section 12940, Subdivision (j)(1)*

a. *The Legislative Counsel Described Assembly Bill No. 76 as a "Revision" of Prior Law*

Digests of the Legislative Counsel are relevant because it is reasonable to infer that members of the Legislature considered them when voting on a proposed statute. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9 [77 Cal.Rptr.2d 709, 960 P.2d 513].) The Legislative

---

[5] Senator Byron Sher voted to enact the 2003 amendment, and as a member of the Assembly also voted to enact the 1984 amendment. Senator Tom McClintock voted against the 2003 amendment, but as a member of the Assembly voted in favor of the 1984 amendment.

Counsel's Digest of Assembly Bill No. 76 stated: "Existing law makes it an unlawful employment practice for [an employer] . . . or any person acting as an agent of such an employer, directly or indirectly, who knows or should have known of harassment of an employee . . . by an employee, to fail to take immediate and appropriate corrective action and to take all reasonable steps to prevent harassment based upon specified categories from occurring." The Legislative Counsel's Digest summarized the effect of Assembly Bill No. 76: "This bill would *revise* the provision summarized in the first paragraph above to include *sexual harassment by nonemployees* if the employer knows or should have known of the incident and fails to take corrective action." (Italics added.) The Legislative Counsel's Digest recognizes that Assembly Bill No. 76 substantively changed the law.

> b. *Amendments While Assembly Bill No. 76 Was Pending Limited Employer Responsibility to Sexual Harassment by Nonemployees*

The legislative history also shows that in Assembly Bill No. 76 the Legislature deliberately rejected a broad prohibition against harassment of whatever kind. Instead the Legislature enacted a version of Assembly Bill No. 76 which limited an employer's potential liability to sexual harassment of employees by nonemployees.

As initially proposed, Assembly Bill No. 76 prohibited all harassment of employees by any person. Early versions of subdivision (j)(1) of Assembly Bill No. 76 referred to employer responsibility for acts "with respect to harassment of employees" and to "[h]arassment of an employee . . . by any person."[6] The Legislature, however, rejected this early formulation of Assembly Bill No. 76. On June 19, 2003, the Senate deleted the prohibition against harassment "by any person" and added a sentence stating that "[a]n employer may be responsible for the acts of nonemployees, with respect to harassment of employees . . . ."[7] On August 28, 2002, the Senate limited the prohibition against harassment to "sexual harassment."[8] The final version of Assembly Bill No. 76 contained both changes.

The June 19 and August 28, 2003 amendments thus materially changed the initial version of Assembly Bill No. 76 by narrowing employers' statutory

---

[6] See Assembly Bill No. 76, introduced December 23, 2002, and amendments dated February 26, 2003, February 27, 2003, and March 11, 2003.

[7] Amendment of June 19, 2003, to section 1 of Assembly Bill No. 76, amending Government Code section 12940, subdivision (j)(1).

[8] With the new language italicized, the August 28, 2003, amendment changed section 12940, subdivision (j)(1) to state, in relevant part: "An employer may also be responsible for the acts of nonemployees, with respect to *sexual* harassment of employees . . . where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (Italics added.)

liability from broad "harassment by any person" to "acts of nonemployees, with respect to sexual harassment of employees." The existence of these starkly different substantive amendments precludes any conclusion that Assembly Bill No. 76 clarified and construed existing law.

> iv. *Ambiguity Concerning the Retroactive Effect of Assembly Bill No. 76 Requires This Court to Construe That Amendment Prospectively*

Assembly Bill No. 76 amended only section 12940, subdivision (j)(1). It did not amend section 12940, subdivision (j)(2), which has been in effect since 1984.[9] Section 12940, subdivision (j)(2) states: "The provisions of this subdivision are declaratory of existing law, except for the new duties imposed on employers with regard to harassment." Section 12940, subdivision (j)(2) protects an employer from liability for conduct occurring before enactment of a statute imposing new duties on that employer. Assembly Bill No. 76 *does* impose new duties on employers with regard to harassment: an employer's potential liability for nonemployees' sexual harassment of employees had not previously existed. Subdivision (j)(2) makes it clear that the new duties imposed on employers with regard to harassment in Assembly Bill No. 76 are *not* declaratory of existing law. Subdivision (j)(2) thus contradicts the Legislature's declaration that the 2003 amendment construes and clarifies the meaning and effect of existing law. A statute that is ambiguous with respect to retroactive application is construed to be unambiguously prospective. (*Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th at p. 841.) The contradiction between subdivision (j)(2) and uncodified section 2 of the 2003 amendments creates an ambiguity, which requires this court to construe the 2003 amendments as applying prospectively.

> v. *To Prevent Unfairness, the Legal Presumption of Prospectivity Should Apply to Assembly Bill No. 76*

To give effect to the statement of legislative intent that Assembly Bill No. 76 construed and clarified the meaning and effect of existing law would be to conclude that section 12940, subdivision (j)(1) had always contained the substance of Assembly Bill No. 76 and that Assembly Bill No. 76 should apply to conduct preceding its enactment. However, the majority concedes that the 1984 statute and later versions of section 12940 before enactment of Assembly Bill No. 76 were ambiguous with regard to employers' liability for harassment by customers and clients. Thus the prior statute did not clearly give notice to Diversified Paratransit that it would be responsible for sexual

---

[9] Current subdivision (j)(2) was made part of section 12940 as subdivision (i) (Stats. 1984, ch. 1754, p. 6406). The section was designated subdivision (h)(2) in 1992 (Stats. 1992, ch. 913, § 23.1, p. 4315) and (j)(2) in 1999 (Stats. 1999, ch. 592).

harassment of Salazar by Diversified Paratransit's customers or clients. Before enactment of Assembly Bill No. 76, no case law applied section 12940 to hold an employer liable for nonemployees' sexual harassment of employees. In the absence of clear notice by prior statute or case authority, to apply Assembly Bill No. 76 to conduct preceding its enactment would amount to an unfair change in " 'the rules of the game' " in the middle of a contest. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1194 [246 Cal.Rptr. 629, 753 P.2d 585].) Under these circumstances, I would find that Assembly Bill No. 76 applies prospectively only and did not apply to events occurring in 1997. Assembly Bill No. 76 must not "[modify] a legal doctrine on which many persons may have reasonably relied in conducting their legal affairs prior to the new enactment." (*Ibid.*)

### 2. Conclusion

I conclude that the Legislature's declaration that Assembly Bill No. 76 clarified and construed the meaning and application of existing law does not accurately describe what the Legislature actually did. To the contrary, the circumstances show that the Legislature substantively changed section 12940, subdivision (j)(1). Assembly Bill No. 76 created a new basis of potential employer liability under the Fair Employment and Housing Act which had not formerly existed. By newly encompassing non-employees' acts of sexual harassment, Assembly Bill No. 76 enlarged a plaintiff employee's cause of action for sexual harassment against an employer. (Cf. *Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 243.) Assembly Bill No. 76 should apply prospectively only.

I would hold that Assembly Bill No. 76 applies only prospectively, that it therefore does not alter this court's majority opinion filed on October 28, 2002, and that the judgment for defendants should be affirmed and the order awarding attorney fees to defendants should be reversed.

A petition for a rehearing was denied April 27, 2004, and on April 6, 2004, the opinion was modified to read as printed above.